## M. D. HERRING v. JAMES C. WALKER.

### No. 285.

1. **Abstract of Judgment must be Certified, to be Notice when Recorded.**—An abstract of a judgment, however correct in form, duly recorded and indexed, is invalid as notice if such abstract is not certified by the clerk, as required by Revised Statutes, article 3154.

2. **Judicial Purposes—Record of Judgment.**—It has been decided in this State, that the recording of a judgment for the purpose of giving it the effect of a lien upon land is strictly a judicial purpose.

3. **Haskell County.**—Prior to June, 1880, Haskell was attached to Shackelford County for judicial purposes only. In 1881 it was changed to Throckmorton County, where it remained until organized, January 13, 1885.

4. **Fact Case—Notice.**—See facts held sufficient to sustain a finding of actual notice of an older title at purchase by appellant of the land in controversy.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH.

This is a suit brought by appellee, J. C. Walker, against appellant, M. D. Herring, for partition of 1176 acres of land out of the Amos King survey of one-third of a league of land, situated in Haskell County; plaintiff claiming that he is the owner of 1076 acres, undivided interest in the land, and that defendant is the owner of the remaining 100 acres.

Defendant answered by general demurrer, general denial, plea of not guilty; and specially, that he was and is the owner of the entire survey of 1176 acres, and that plaintiff's claim of title and suit cast a cloud upon his title, wherefore he (defendant) prays for removal of the cloud, and for judgment for the land.

The court, trying the cause without a jury, on October 23, 1890; rendered judgment for plaintiff for 1076 acres of land, for defendant for 100 acres, and for partition as prayed for by plaintiff; from which judgment defendant has appealed. Partition was made during the term, and the same was confirmed by final decree of the court on December 30, 1890.

It was agreed, that Lewis Moore and Ransom Moore constituted a common source of title for both parties.

Lewis and Ransom Moore executed a trust deed to George Clark and John L. Dyer, trustees, October 22, 1878, duly acknowledged by the grantors October 23, 1878, filed for record in Grayson County on Oc-

tober 25, 1878, and there duly recorded in mortgage records on October 25, 1878; filed for record in Shackelford County on February 22, 1881, and there duly recorded in the records of Haskell County, and afterwards filed for record in Haskell County on May 19, 1890. The deed of trust conveyed 1920 acres of land in Grayson County, one-half league in Falls County, and the 1076 acres of land in suit, and authorized the sale of the lands by either of the trustees at public or private sale.

By virtue of the trust deed, John L. Dyer, trustee, on February 15, 1881, conveyed by deed the 1076 acres of land in suit to the Waco National Bank, for the sum of $1076, which deed was duly acknowledged and filed for record in Shackelford County on February 22, 1881, and recorded by the clerk of said county in the records of Haskell County, and on May 19, 1890, filed for record in Haskell County.

On September 24, 1881, the Waco National Bank conveyed by deed, duly acknowledged, the 1076 acres of land to M. Surratt, for a consideration of $400, which deed was filed for record in Throckmorton County on October 19, 1881, and duly recorded in the deed records of Haskell County.

M. Surratt, on November 1, 1881, by deed, duly acknowledged on January 27, 1886, for $1500, conveyed the same 1076 acres of land to James C. Walker, the plaintiff, which deed was filed for record in Haskell County on February 1, 1886.

The defendant then introduced the following testimony:

A judgment of the District Court of McLennan County, of date May 6, 1880, in cause number 3276, in favor of M. D. Herring against Lewis Moore and Ransom Moore, for $5949.59, bearing 8 per cent interest from date thereof.

Original execution under the judgment, issued August 5, 1880, to Mc-Lennan County, returned, no property found, on August 7, 1880; execution docket, showing issuance of executions on said judgment as follows: August 7, 1880, to Grayson County; August 2, 1881, to McLennan County; February 3, 1888, to McLennan County; and then original pluries execution to Haskell County, in due form, dated February 28, 1889, returnable in ninety days; return of sheriff of Haskell County endorsed thereon, showing that it came to hand on March 12, 1889, and was levied same day on the Amos King one-third of a league, of which the 1176 acres are a part; advertisement of sale; sale at Haskell County court house door on first Tuesday in April, 1889, to M. D. Herring, for an amount (not stated), which amount was credited on the execution, and showing that he paid the costs of the levy and sale, amounting to $9.50; a deed, of date April 2, 1889, to Herring by the sheriff of Haskell County, reciting the foregoing execution, levy, and sale, and conveying to him all the right and title of Lewis and Ransom Moore in the one-third of a league for $100,

which deed was duly acknowledged on the day of its date, filed and re-corded in Haskell County on the same day.

Herring paid in cash the costs of the levy and sale as stated in the sheriff's return, $9.50, as part consideration for the deed and part of the amount credited on the execution.

Defendant introduced in evidence a certified copy from the judgment records of Shackelford County of an abstract of the judgment in favor of M. D. Herring against the Moores, filed in Shackelford County clerk's office on June 12, 1880. The copy shows the abstract to be in form, but it is not certified by the clerk of the District Court of McLennan County, where the judgment was rendered; also, certified copy of the index of judgment records of Shackelford County, showing that the abstract was duly and legally indexed, both direct and reverse, with names of plaintiff and defendants, and page of record.

It was in proof that Ed. J. Hamner, Esq., in looking over the records of Haskell County, where he lived, found a deed on record to plaintiff, Walker, and thinking Judge Walker was dead, he wrote to Mr. Cain, Walker's son-in-law, at Tyler, about it, and in a short time thereafter re-ceived a letter from Walker, from Waco, in reply, stating that he (Walker) owned the land referred to in the letter to Cain. Hamner then wrote to Judge Walker that a part of the land had been sold for taxes, expressing the opinion that his (Walker's) deeds were not properly recorded; to which Walker replied, requesting Hamner to send him an abstract of the title. Hamner made and sent the abstract as requested. In making the abstract he found on the deed records of Haskell County the several deeds introduced in evidence by plaintiff on the trial of this case, showing the date of their filing and recording, all of which he put in the abstract. For this service he charged Judge Walker $7.50, but Walker sent him only $5, and this he says offended him. A few days after this, the clerk of the County Court of Haskell County handed him a letter from M. D. Herring, the defendant, asking if Lewis and Ransom Moore had any land subject to execution in his county. Hamner immediately wrote Herring, that if he would send him an execution against the Moores, he (Hamner) could find property to levy it on; and in reply Herring sent him the exe-cution that was levied on the land. Hamner acted as agent of defendant, Captain Herring, placed the execution in the hands of the sheriff, with in-structions to levy it on the land, wrote out the levy and return for the sheriff, and bought in the land at the sale for Captain Herring. Hamner knew of Walker's claim to the land and the condition of his title at the time he had the levy made, and when he bought in the land for Captain Herring; the knowledge acquired as stated in making the abstract for Walker.

Upon the issue as to actual knowledge of Captain Herring of the deed of trust by the Moores to Clark and Dyer, George Clark testified as follows:

"I drafted the deed of trust from Lewis and Ransom Moore to George Clark and J. L. Dyer. After the execution of said deed of trust, and prior to the defendant, Herring, buying the note against the Moores on which he obtained judgment, I had a conversation regarding the indebtedness of Lewis and Ransom Moore and the execution of said deed of trust. Herring came to my office and inquired about the matter, and I got out the papers, and Herring seemed to know all about the deed of trust. My recollection is, that I showed defendant said deed of trust, but of this I am not positive. We were discussing principally the value of the Grayson County land, and my recollection is, that the other lands mentioned in the deed of trust were also spoken of, but I can not say positively that any mention was made of the Haskell County land, though I think there was. Captain Herring said he knew all about the Grayson County land, and was of the opinion that it could be sold for enough to pay off all the indebtedness secured by the deed of trust and that of defendant also. The reason I do not recollect positively as to any mention of the land in Haskell County being talked about between us, is because Captain Herring thought at the time that the Grayson County land was amply sufficient in value to pay the indebtedness secured by the deed of trust and his claim also."

Upon the same subject Captain Herring testified as follows: "I have never seen this deed of trust [the one referred to in the statement of facts and by George Clark] before this moment; I am positive Judge Clark never showed me the same at any time, nor have I ever seen it until now. I never knew that either Lewis Moore or Ransom Moore had any land in Haskell County until about March, 1889, when my attorney, Ed. J. Hamner, wrote me to send him an execution. In the conversation referred to by George Clark no mention whatever was made of the Haskell County land, as both he and I were of the opinion the Grayson County land would bring enough to pay off the Moore indebtedness. Sometime after the sale of the Grayson County land to the bank, John Norris was leaving here to go out into Haskell County, and I requested him to find out if the Moores had any lands out there, as I had learned from some source which I do not now recollect that the Moores had some land in that section of the country, but in what county I did not know; and not until after the levy of the execution in this case did I know of this Haskell County land, as John Norris wrote me he could not find any land belonging to the Moores in that country. I did go to Grayson County and looked at the land there, but I never examined the records there, nor did I know of any deed of trust being recorded there. I did not have the land there sold, because I found that Clark & Dyer had already sold it to the bank. I had an abstract of my judgment recorded there."

[This statement accompanied the opinion.]

*D. A. Kelley,* for appellant, cited: Baker v. Beck, 74 Texas, 562; Folts v. Ferguson, 77 Texas, 301.

*M. Surratt,* for appellee.—The court correctly rendered judgment in favor of appellee, because the abstract of the judgment recorded in Shackelford County was not certified to by the clerk of the District Court ·of McLennan County, where said judgment was rendered, and hence appellant acquired no lien by its registration. The evidence introduced was a certified copy of the judgment records of Shackelford County, and purports to be an abstract of a judgment rendered in the District Court ·of McLennan County, May 6, 1880. It does not appear to have been made out by the clerk of said court, nor certified under his hand and official seal. Rev. Stats., arts. 3154, 3157; Gin Co. v. Oliver & Griggs, 78 Texas, 185. The burden was on appellant to show affirmatively that the statute was complied with in fixing the lien (Gruner v. Westin, 66 Texas, 209), and that he had no notice of the trust deed. Bremer v. Case, 60 Texas, 152. Appellant had actual notice of the trust deed before he re-·covered judgment under which he claims to have fixed a lien on this land.

COLLARD, ASSOCIATE JUSTICE.—Appellant's first and only assignment of error is as follows:

"The court erred in rendering judgment in favor of plaintiff (appellee) for any part of the land in suit, because defendant had a superior lien over the unrecorded deed of trust given by the common source of title, to-wit, Lewis and Ransom Moore, to George Clark and John L. Dyer, which said lien was acquired by him by virtue of his judgment and the filing and record of the abstract of his judgment in Shackelford County on June 12, 1880, when said deed of trust was not properly recorded until May 19, 1890, at which time the land in suit had been levied upon, sold, and purchased by virtue of an execution issued on said judgment; and appellant had no notice, actual or constructive, of said unrecorded deed of trust prior to the date of the levy of said execution."

At the time defendant had his abstract of judgment recorded in Shack-·elford County, Haskell County was attached to it for judicial purposes only. Gen. Laws 1876, p. 133.

It was changed to Throckmorton County in 1881, where it remained until it was organized, January 13, 1885. Gen. Laws 1881, p. 12; Gen. Laws 1883, pp. 31, 62; Gen. Laws 1884, spec. sess., p. 17.

It has been decided in this State, that the recording of a judgment for the purpose of giving it the effect of a lien upon land "is strictly a judi-·cial purpose." Folts v. Ferguson, 77 Texas, 307.

The record of defendant's abstract of judgment in Shackelford County on the 12th of June, 1880, to which at the time Haskell County was attached for judicial purposes, if properly recorded, created the statutory

lien upon the land in suit situated in Haskell County. But it was not properly recorded, the clerk making the abstract having failed to certify it as such. Rev. Stats., arts. 3154, 3157; Gin Co. v. Oliver; 78 Texas, 184; Spence v. Brown, decided by this court at present term.

But appellant insists that the judgment of the lower court is erroneous, because he says he acquired his title in good faith and for a valuable consideration, without actual or constructive notice of the deed of trust to Clark and Dyer.

Is it true, that he did not have actual notice of the deed of trust so as to constitute him an innocent purchaser, admitting that in every other respect he was such?

Testimony was submitted by both parties upon this subject, and it was the province of the trial judge to decide the question. We can not say that he decided it incorrectly or without sufficient evidence to support the conclusion that defendant had such notice—at least that he was in possession of facts, as shown by the interview with witness Clark, that would put a man of ordinary prudence upon inquiry.

We do not feel authorized, as an appellate court, to disturb the finding of the court below upon this subject.

It is therefore ordered that the judgment of the court below be affirmed.

*Affirmed.*

Delivered June 21, 1893.