## D. W. BROUGHTON v. J. H. BLALOCK.

Where the defendant paid the plaintiff twenty-five dollars, and gave him his note for $175, for disclosing to him a secret system of medicine, which was contained in a pamphlet delivered by the plaintiff to the defendant, and it was agreed that if the defendant should at any time become dissatisfied with his bargain, and wish to discontinue the practice of said system, he should return the pamphlet, and the plaintiff would refund the twenty-five dollars, and return the note, it was held in a suit on the note, which was payable more than a year after date, that the defendant could not avail himself of the stipulation for rescission, after the note had fallen due and suit had been commenced thereon ; and held further, that having practiced the system, and received money therefrom, he could not avoid the note by proving that the system was worthless, and its practice dangerous, but that he should have returned the book, as stipulated, or shown good excuse for not so returning it.

Error from Smith. Tried below before the Hon. William W. Morris.

*Rosenbaum, Donley, Robertson* and *Hood,* for the plaintiff in error.

*B. L. Goodman* and *G. W. Chilton* for defendant in error.

LIPSCOMB, J.   The facts collected from the record show, that the plaintiff in error, on the 18th August, 1852, purchased from the appellee, the secret of practicing medicine, on the system of animal magnetism, by which he was to receive a book on the subject, and to receive from appellee instructions in making the compounds of the medicine, to be used on the principles set forth in the book ; that appellee stated it was the easiest and surest method of curing all diseases, and would supersede all the old systems ; that it was Conner's system, and a secret ; and that he had a patent, and was authorised to sell the right west of Red River ; that the purchaser was to take an oath of secresy not to communicate the method to any other person, and the purchaser was limited to this right to ten miles around him ; that the purchaser was to pay for this right two hundred dollars, twenty-five dollars on receiving the book, and one hundred and seventy-five dollars by his note, payable on the 21st day of December, 1853 ; and if he should at any time become dissatisfied with the practice, and find it not what it was represented, he was to return the book, and the money was to be refunded to him and his note returned.   The money was paid, and the note given by the purchaser.

This suit was commenced on the note for one hundred and seventy-five dollars.   The file of the plaintiff's petition bears date in March, 1854.   Plaintiff had judgment, and defendant brought a writ of error.   It is not necessary to set out the various and tedious matters set up in defence ; they may well be condensed into the following, which is believed to embrace the whole.   That the system was not new ; that it was not valuable, but dangerous in practice, to health and life ; that it had not been patented ; that it was a fraud upon the plain-

tiff in error. To the two first, there was evidence conducing to support them, but not clearly establishing the defence: if they could be regarded as defences. It may be regarded as proven that Conner's system was not patented. But there is no sufficient evidence of the fraud ; but, on the contrary, there is no doubt but Blalock believed in its value and efficiency, for the cure of all diseases ; and it would not follow that because it was not patented, he intended, in representing it to be patented, that he designed the commission of a fraud on the plaintiff in error

Though learned in the occult science of animal magnetism, the presumption is that he knew but little of the legal meaning of the term patent, but believed the permission given to him by Conner was a patent. We will leave this part of the subject.

There was a provision in the contract, that if the purchaser was not pleased with the practice, or found it not what it was represented to be, he could at any time return the book, and claim to have the money paid, refunded, and the note delivered up to him. Do the words " at any time" mean any indefinite time, however remote? We think not. No fair construction could extend it beyond the maturity of the note. This is made obvious from the provision that the note should be delivered up. The note and the contract bore date 18th August, 1852, and the note was payable on the 25th day of December, 1853, giving near about one year and a half to determine by practice, whether it was what it had been represented to be, by the appellee ; and in all of this time the plaintiff in error had only to return the book of the secret, and claim the hand money, and demand the surrender of the note, without any proof that the system of practice was not what it was represented to be by the appellee, when the contract was made. But in all that time he never did avail himself of this provision in the contract, but did practice under it, and by such practice, made, from his own acknowledgment, large com-

pensation. He told one witness, on the 1st of January, 1853, that he had booked four hundred dollars by the Blalock practice, and it was not until the 1st of January, 1854, that he intimated any dissatisfaction with the practice; and then not to defendant in error, claiming a rescission of the contract. This he never did, until his answer to this suit brought on his note. We believe that after having practised under his purchase so long, and charged compensation for his services, whether it was what it had been represented to be or not, it was too late, after the commencement of suit, to wake up to a knowledge of the humbuggery, and say I gave the note for a *thing of no worth*.

We therefore believe that the Court did not err in charging the jury, that "the plaintiff in error (defendant in the Court "below,) could not avoid the payment of the note, if he had "practiced under the system and received compensation for "his services in such practice, and had not returned the book." He had stipulated a return of the book, as precedent to refunding the money paid, and giving back the note; and whether the book was of any intrinsic value or not, as it was a part of his contract to do so, he was bound to return it. It is not like the case put by the counsel for the plaintiff, of the purchase of an article that proved to be entirely worthless, where the proof that it was so worthless, excuses an offer to return the article, in a suit to recover back the purchase money, or to successfully resist a suit for the recovery of the price agreed on: in that case, there was no express contract to return. Wherever there is an express contract to return the thing purchased, or to do a particular act, it must be done, or offered to be done, or the reason given why it was not done. If lost by accident, or destroyed without the fault of the party, it would excuse the return; or if the thing to be done was not done, from any sufficient cause beyond the control of the party undertaking, it would be regarded as a *cy pres* performance. In this case, the plaintiff in error has precluded

himself from setting up the defence, that the thing was of no value, because it is in proof that that he made it valuable to him, not only from his acknowledgment that he had booked four hundred dollars, but by proof that one person had paid to him a bill of fifty dollars.

Under the view we have taken, it is not necessary to examine any supposed error in the other rulings of the Court, because we are satisfied, that if in these matters the Court erred, the result could not. be changed. It is clear that the note could not be avoided by the plaintiff in error, in the position in which he has placed himself, and the judgment must be affirmed.

Judgment affirmed.