## T. W. FOLTS ET AL. v. A. H. FERGUSON ET AL.

### No. 6642.

**1. Minors Must do Equity in Rescinding Their Acts.**—Lands subject to a judgment lien were conveyed to minors. They by power of attorney authorized an agent to sell the land to pay the debt. Sale was made by the agent and the debt thereby paid. The minors suing to avoid the act of their agent must tender the money raised for them by the sale, with interest.

**2. Subrogation.** — In suit by minors to rescind a sale made by their authority, whereby a judgment was satisfied, which judgment was a lien upon the property, it was error to sustain exceptions to the answer setting up these facts and asking to be subrogated to the rights of the plaintiff in the satisfied judgment.

ON REHEARING.

**3. "Judicial Purposes Only"—Record of Judgment—Lien.**—Haskell County was attached to Shackelford County for "judicial purposes only." February 17, 1879, a judgment of the District Court of Travis County was recorded in Shackelford County. *Held*, that by such record a lien was fixed upon lands of the defendants in the judgment lying in Haskell County.

**4. Same.**—We think that the recording of a judgment for the purpose of making it a lien is strictly a judicial purpose.

**5. Same—Practice.**—There can be no doubt about the propriety of issuing execution upon such judgment to the sheriff of the county to which the unorganized county was attached for judicial purposes.

**6. Statute Construed.**—The Act of March 30, 1881, in no way affected the status of judgments registered before its passage.

**7. Tendering Purchase Money.**—Where plaintiffs seek to avoid their sale by reason of their minority, and only claim a part of the land, they are required to restore only the proportional part of the purchase money.

**8. Voluntary Sale.**—A voluntary sale by an insolvent debtor is good as between the parties. Miller v. Koertge, 70 Texas, 162.

Appeal from Shackelford.    Tried below before Hon. J. C. Randolph. The opinion gives a sufficient statement.

*Harwood & Harwood* and *D. W. Doom,* for appellants.— 1.   If execution had been levied on the land to satisfy the judgment in favor of the State and defendants had become purschasers at the sheriff's sale, they would be subrogated to all the rights of the judgment creditors.   It would be the debtor making the conveyance by and through the sheriff.   The debtor can do for himself that which he can do through the sheriff.   Hence Mrs. Ferguson having made the sale through her agent and attorney William F. Ferguson for the purpose of satisfying the judgment, the purchasers are entitled to be subrogated to all the rights they would be entitled to had they purchased from the sheriff.   Howard v. North, 5 Texas, 291; Morton v. Welborn, 21 Texas, 774; Andrews v. Richardson, 21 Texas, 287; Herndon v. Rice, 21 Texas, 457; French v. Grenet, 57 Texas, 274;  Pome. Eq., 388; Stone v. Crawford, 1 Posey's U. C., 605, and cases cited.

2.    The defendants' second amended answer alleges that the State of Texas recovered a judgment in the District Court of Travis County on the 21st day of December, 1878, against Mrs. E. A. Ferguson and others for the sum of $2442.46, and that on the 17th of February, 1879, a certified copy of the judgment was filed and duly recorded in the county clerk's office of Shackelford County, to which county Haskell County, then unorganized, was attached for judicial purposes; that executions were issued within a year from the date of the judgment; that the sale was made to defendants for the purpose of satisfying said judgment in May, 1880. These facts, if supported by the evidence, show a judgment lien at the date of the satisfaction of the judgment by the defendants.

3.    It is an elementary rule that the fraud of the grantor taints the conveyance, except as to purchasers for a valuable consideration, and that the mere acceptance of the deed without a valuable consideration for its support is evidence of a participation in the fraudulent intent of the grantor.    Belt v. Raguet, 27 Texas, 478; Raymond v. Cook, 31 Texas, 384; Moreland v. Atcheson, 34 Texas, 355; Eastham v. Rountree, 56 Texas, 114; Davis v. Sittig, 65 Texas, 497.

No brief for appellees.

HENRY, Associate Justice.—Appellees instituted this suit to recover undivided interests in two tracts of land lying in Hardeman County.

Their petition charged that while they were minors they with the owners of the other interest in the land signed a power of attorney authorizing one William F. Ferguson to execute a deed of conveyance of the land, and that acting under the power Ferguson sold and conveyed the land to parties under whom the defendants claim title to it.

The petition prayed for a decree canceling the power of attorney and deed made under it, and quieting plaintiffs in their possession of the land.

The defendants, among other defenses, pleaded the following:

"That heretofore, to-wit, the 21st day of December, 1878, in a certain suit then pending in the District Court of Travis County, in the State of Texas, No. 5070, styled The State of Texas v. William F. Ferguson, Henry Woodruff Bendy, Elijah A. Ferguson, and Elizabeth A. Ferguson, the plaintiffs in said suit, the State of Texas recovered a judgment against the defendants in said suit, William F. Ferguson, Henry Woodruff Bendy, Elijah A. Ferguson, and Elizabeth Ferguson, in the sum of $2442.46, together with her costs in that behalf expended, and that execution issued therefor. That said William F. Ferguson, Elijah A. Ferguson, and P. L. Ferguson and the plaintiffs in this suit, making six in all, were brothers, and the said Elizabeth A. Ferguson was their mother, and a widow at the time the said judgment was rendered. That the said judgment, as soon as it was rendered, became and was the debt of the said Elizabeth A. Ferguson, and was a charge upon all of her property subject to execution for the payment of debts, and all of her said property could by execution issued on the judgment be sold for the payment thereof. That afterward, to-wit, on the 17th February, 1879, a certified copy of the said judgment was filed in the clerk's office of the County Court of Shackelford County, Texas, to which county the county of Haskell, which was then unorganized and in which the lands in controversy in this suit are situated, was attached for judicial purposes, and on, to-wit, the 19th day of February, 1879, was duly recorded in the office of the county clerk of the County Court of said Shackelford County, in record book A, pages 629 and 630, book of mortgages, and thereby became a lien on the land sued for in this case to the extent of the interest owned by the said Elizabeth A. Ferguson in said land. That at the date of said judgment and the record of a certified copy thereof as aforesaid the title to all of said lands, so far as any interest claimed by the plaintiffs in this case is concerned, was in said Elizabeth A. Ferguson, who held a deed of gift therefor, making it her separate property; and neither the State of Texas, its officers, agents, or attorneys had any notice, either actual or constructive, of any pretended claim to said land, or any part thereof, by the plaintiffs in this suit or any of them. That afterward, to-wit, on the 2d day of December, 1879, within one year from the date of said judgment, execution was issued thereon to Travis County, Texas, as required by law, which execution was on, to-wit, the 4th day of December, 1879, returned by the sheriff of said Travis County "not executed, no property found" in that county. That afterward, to-wit, on the 4th of December, 1879, within one year from the date of said judgment, another execution was issued on said judgment to Jasper County, Texas, where all the defendants in execution then resided.

"That afterward, to-wit, on the 5th day of January, 1880, the said Elizabeth A. Ferguson, while the said judgment and the lien thereof upon the lands in controversy in this suit was in full force and said judgment unpaid and unsatisfied, made, executed, and delivered to her children P. L. Ferguson, G. R. Ferguson, L. T. Ferguson, Austin H. Ferguson, Elizabeth L. Ferguson, wife if said Elijah A., and Clara E. Ferguson, wife of the said William F. Ferguson (these last two husbands were parties to said judgment), a deed of gift, upon no consideration except love and affection, conveying to them the lands in controversy in this suit; that at about the same time the said Elizabeth A. Ferguson made and executed to same grantees deeds of gift, without any consideration save love and affection, conveying many other tracts of land, viz., one tract of 1700 acres in Hardin County, one league in Tyler County, one tract of about 3100 acres in Hamilton County, and all other land and property of every kind owned by her except her homestead. That at the time the said deeds were made the said Mrs. Ferguson was largely in debt to various persons besides the judgment aforesaid, and that after making said deeds of gift was wholly insolvent. That the said deeds of gift were all fraudulent, and were made to hinder and delay her creditors, particularly the State of Texas, the owner of said judgment, and were therefore void. That all of said lands and property conveyed by the deeds aforesaid, and particularly the lands involved in this suit, being still subject to the payment of said judgment, * * * the parties to the same, including the said Elizabeth A. Ferguson, made, executed, and delivered to said William Ferguson the said power of attorney to enable him to convey the lands in controversy, to satisfy and pay off said judgment, that they might enjoy the remainder of the lands and property free from liens or liability to be sold for the satisfaction of said judgment. That in pursuance of said power of attorney the said William F. Ferguson, as their agent and attorney of the said Elizabeth A. Ferguson and grantees in said deed of gift, including plaintiffs in this suit, for and on their behalf executed and delivered to said Folts & Donnan the deed of conveyance of date 5th of May, 1880, conveying the land in controversy for the consideration of $100 cash and the balance due on the judgment, amounting to $1684.03, and then and there agreeing with Folts & Donnan that the title of said land should pass to them as perfectly as if the same had been sold under execution issued upon said judgment. That on account of said sale and conveyance to them said Folts & Donnan paid off and satisfied the balance due on said judgment as aforesaid, and caused the same to be satisfied of record, and the last execution issued on said judgment was returned without levy, and no further execution has been issued on said judgment, and all of the remainder of said lands and property conveyed by said deeds of gift were by the payment and satisfaction of said judgment set free from all liability to be sold in satisfaction of said judgment, and said plaintiffs were benefited and placed in condition

to enjoy the remainder of said lands and property conveyed by said deeds of gift from all hindrance on account of said judgment; and thus the said Folts & Donnan and their assignee, the defendant C. R. Beaty, became subrogated to all the rights of the State of Texas to the same extent as if the same land had been sold under execution issued on said judgment and purchased by them at said sale."

The court sustained plaintiffs' exceptions to this defense, and after hearing the evidence rendered judgment in favor of plaintiffs according to their prayer. The facts alleged in the answer are sufficient to show that at the dates of the conveyance of the land in controversy by their mother to plaintiffs and the deed by virtue of the power of attorney to Folts & Donnan, the judgment in favor of the State was a subsisting lien upon it. As the land was sold for the express purpose of providing for the discharge of the judgment lien, it follows, as the result of repeated decisions of this court, that even if plaintiffs are not bound by the deed to Folts & Donnan on account of their minority, they yet can not annul that deed and recover back the land without restoring the money that went to discharge the judgment lien, with interest. Howard v. North, 5 Texas, 290; Giddings v. Steele, 28 Texas, 748; French v. Grenet, 57 Texas, 273; Northcraft v. Oliver, 74 Texas, 162.

We think the court erred in sustaining exceptions to so much of the answer as set up the judgment lien and the right of the defendants to be subrogated to the rights and remedies of the State under its judgment. The defendants offered record evidence to prove that the judgment in favor of the State was a subsisting lien on the land at the date of its conveyance to them, which was excluded.

We can see no objection to the evidence, except that after an exception was sustained to the pleading there remained no issue for it to apply to. Upon another trial it should be admitted.

For the error noticed, the judgment must be reversed and the cause remanded.

As the other grounds of error now insisted upon may not occur upon another trial, we deem it unnecessary to rule upon them now.

*Reversed and remanded.*

Delivered May 13, 1890.

### ON MOTION FOR REHEARING.

*Douglas & Lanier* and *L. W. Campbell,* on motion for rehearing.—The point made in the first ground for rehearing was not raised in the court below nor in the briefs and assignments of error in this court. But if the law is as we understand it to have been construed by the decisions of this court since the trial below, this being a question of law, may now be properly applied to this case on rehearing. We contend that though the

allegations of defendants' answer may be true, still they fail to show the State had a judgment lien on the land, because Haskell was attached to Shackelford for judicial purposes only.   The caption and body of the act repel any other construction.   Gen. Laws 1876, p. 133.   The lien to which defendants are given the right of subrogation is of purely statutory origin, and its existence depends upon the judgment being properly recorded in the county pointed out by the statute.   The judgment was rendered and the registration took place prior to the Act of March 30, 1881, and the lien of course can find no aid from the terms of that statute.   The Act of November 9, 1866 (Pasch. Dig., arts. 7005–7008), is the law to which defendants must look to acquire a judgment lien on the land in question.   That statute in express terms gives the right and points out the method whereby judgment liens may be created on lands in Texas, under which, when construed in connection with the decision of this court, notably O'Shea v. Twohig, 9 Texas, 336; Clark v. Goss, 12 Texas, 395; Wilson v. Catchings, 41 Texas, 587, and others, it is certain that Haskell, by simply being attached to Shackelford for judicial purposes, was not thereby made a part of said county and was not attached for purposes of registration.   The Act of November 9, 1866, requires the judgment to be recorded in the county where the land lies, and the record is to be made in the book used for the registration of mortgages, so that the proper county for recording deeds and mortgages was under said act the proper and only county in which a judgment could be recorded so as to become a lien on lands.   Baker v. Beck, 74 Texas, 562, and cases cited.   And we conclude there was no judgment lien on the land in question, and such being the case the land was not charged with the payment of said judgment as claimed when the deed was made from Mrs. Ferguson to her children; and as the State held no lien, none could through the operation of said transaction come down to defendants, and the land is in no way charged therewith; and it follows that plaintiffs may recover the land without restoring to defendants the money paid by them.

HENRY, ASSOCIATE JUSTICE.—Appellees in support of their motion for rehearing contend that the recording of the State's judgment in Shackelford County on the 17th day of February, 1879, did not create a lien on the land in controvesy situated in Haskell County, which was then attached to Shackelford County for "judicial purposes only."

The Act of November 9, 1866, was in force when the judgment was rendered, and directed that "a transcript thereof, duly certified by the clerk under the seal of the court, be recorded in the book used for the registration of mortgages" in the county where the land was situated.

The record in this instance was made before the passage of the Act of March 30, 1881, and can not derive any aid from that act, which provides that "all deeds, conveyances, mortgages, deeds of trust, or any other writ-

ten contracts relating to real estate, which are authorized to be recorded, * * * relating to real estate situated in an unorganized county, shall be recorded in the county to which such unorganized county is attached for judicial purposes." The act contains a proviso that nothing in it "shall be constructed to affect the registration of any such instruments heretofore made in either a land district to which any unorganized county may have been attached, or any county to which any unorganized county may have been attached for judicial purposes."

While this act settled for the future the disputed question as to where such records should be made, it did not in any way affect the legality of records previously made.

Appellees in support of their contention against the validity of the record of the judgment made in the county of Shackelford, to which Haskell was then attached as an unorganized county for "judicial purposes only," refer us to the case of Baker v. Beck, 74 Texas, 562. The question in that case was whether a deed for land situated in an unorganized county and attached for "judicial purposes only" to another county was before the act of 1881 required to be recorded in the county from which the territory of the unorganized county was taken or in the county to which it was attached for "judicial purposes only," and it was decided that the county from which the territory was taken was the proper place to record the deed.

The question before us is as to the proper county for a judgment to be recorded in to make it operate as a lien on land, and not as to the proper place for recording a deed conveying land.

The questions are materially different. We think that the recording of a judgment for the purpose of making it a lien is strictly a judicial purpose. It is as much one step towards collecting a judgment as is the levy of an execution issued on the judgment. The sheriff's deed when made relates back to the date of the record, which thereby becomes an essential part of the title conveyed by him. There can be no doubt about the propriety of issuing the execution upon the judgment to the sheriff of the county to which the unorganized county is attached for judicial purposes and in which the judgment was rendered, nor about that officer's power to sell the property at the court house of his own county.

It is useful and important for bidders to have the means of ascertaining whether the judgment under which the sale is being made is a lien on the land at the time and place of making the sale.

It is true that knowledge of all records relating to the land would be useful under the same circumstances; but the fact that the law before 1881 did not require conveyances to be recorded in the county where the judicial proceedings were conducted can not be held to modify or limit the effect of laws with regard to such proceedings, which include all of the steps taken in the actions for the recovery of debt from the filing of the

original petition to the sale of the property and the execution of the deed to the purchaser and payment of the money to the creditor.

The judgment in favor of the State was recorded at the proper place and in due time, and proper diligence having been exercised in the issuance of executions, according to the averments of the answer, a lien upon the land did exist in favor of the State.

We do not think that this is a proper case to apply the rule contended for as applicable between principal and surety so as to devolve the whole of the judgment in favor of the State upon the one-sixth of the land purchased by defendants from W. F. Ferguson, or from his wife, rather.

The answer of defendants shows that only one-half of the land was conveyed by appellees, and that defendants only acquired from them one-half of the land in controversy. Plaintiffs in the court below claimed one-half, and not the whole of it, and by the expression in our opinion that they can not "recover back the land without restoring the money," we did not intend to be understood as deciding that they must refund the whole amount of the purchase money paid by defendants.

Before they can be permitted to recover one-half of the land they must refund one-half of the purchase money paid by defendants, and interest thereon from the time that the money was paid by defendants.

If it shall be made to appear that defendants have had the actual use of the land, they should be charged with that, or with the excess of the value of the use over permanent and valuable improvements if they have placed such on the land. This question is raised by appellees by their motion for a rehearing, but as it is not otherwise properly presented it does not become necessary or proper for us to say more on that branch of the cause.

Appellants in their reply to the motion for rehearing ask us to pass upon the following proposition, which they contend is raised by one of their assignments of error:

"The voluntary conveyance by Mrs. Ferguson to her children was void as to her creditors, and being void the title remained with her, and her subsequent sale, effected through her agent, William F. Ferguson, to Folts & Donnan for the purpose of paying her debts, was a valid sale and can not be questioned by the donees claiming under the voluntary conveyance."

We can not give our assent to this doctrine. The question was considered by this court and decided otherwise in the case of Miller v. Koertge, 70 Texas, 162.

The motion is overruled.

*Motion overruled.*

Delivered June 10, 1890.