## BROWN et al. v. BRENNER et al.

(Court of Civil Appeals of Texas. Galveston. Nov. 20, 1913. Rehearing Denied Dec. 11, 1913.)

1. APPEAL AND ERROR (§ 732*)—ASSIGNMENTS OF ERROR—REQUISITES.

An assignment that the court erred in refusing to grant specified defendants' amended motion for new trial was too general to present any question for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3022–3024; Dec. Dig. § 732.*]

2. DEEDS (§ 78*)—VACATION — GRANTOR — MENTAL INCOMPETENCY — QUESTIONS FOR JURY.

In suit to set aside a deed, evidence *held* to authorize submission to the jury of the question whether the grantor was mentally incompetent to make the conveyance at the time he signed it.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 648; Dec. Dig. § 78.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITION—RELEVANCY.

A proposition that the court erred in permitting certain witnesses to testify that in their opinion the grantor in a deed in controversy did not have mental incapacity to transact business, and in the witnesses' opinion he was not in his right mind when he executed the deed, was not germane to an assignment that the court erred in refusing to grant defendants a new trial because the evidence was insufficient to warrant a finding that the gran-

tor had not mental capacity when he executed the deed and therefore could not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. APPEAL AND ERROR (§ 760*) — REVIEW — BRIEFS—OBJECTIONS AND EXCEPTIONS.

A ruling on admission of testimony cannot be reviewed where appellant's brief does not indicate that any objection was interposed to the testimony when offered and does not refer to bills of exception as having been taken to the court's ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3095; Dec. Dig. § 760.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITIONS—APPLICABILITY.

A proposition that, plaintiff having introduced several witnesses to show that the grantee in a deed in controversy had mental capacity when he executed it, it was error for the court to render a judgment canceling the deed but should have directed a verdict for defendants was not germane to an assignment that the court erred in refusing to grant defendants a new trial because the evidence was insufficient to warrant the jury in answering in the affirmative an interrogatory as to whether the grantees had notice of the grantor's alleged mental incapacity.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. INSANE PERSONS (§ 66*) — CONVEYANCE — EXECUTION—CONSIDERATION—DUTY TO RETURN.

Where, in a suit to set aside a deed alleged to have been executed by an insane person, there was no evidence that he had any money at the time of his death except $125, which was the proceeds of rents of the property in controversy, and there was no proof that he purchased necessaries with the consideration nor that it was invested by or for him for the benefit of his estate or was still on hand, defendants were not entitled to a return of the consideration as a condition to canceling the deed.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 100–102, 104, 105; Dec. Dig. § 66.*]

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Action by W. F. Brenner and others against Carrie Brown and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Heidingsfelders and Jas. Slyfield, both of Houston, for appellants. Van Velzer & Lewis, D. F. Rowe, and Leonard Doughty, all of Houston, for appellees.

McMEANS, J. This suit was brought by appellee W. F. Brenner against Carrie Brown, O. Frosch, V. T. Watson, C. E. Heidingsfelder, and Camille Blue in the nature of a bill in equity for the purpose of securing the cancellation of a deed of conveyance of certain lots of land in the city of Houston, wherein plaintiff's father, Henry Brenner, was grantor and Carrie Brown was grantee, and to secure the cancellation of various instruments subsequently executed, whereby the title to the grantee from Henry Brenner was conveyed to appellants. Cancellation was sought upon the grounds that: (1) Carrie Brown was a fictitious person; (2) the

deed to her was a forgery; (3) it was induced by active fraud; (4) that the grantor was mentally incompetent to make the conveyance at the time he signed it; and (5) the appellants took with knowledge of his mental infirmity. After the institution of the suit appellee Brenner conveyed to Camille Blue an undivided interest in the lots, and thereafter she intervened in the suit, setting up the title thus acquired, and became plaintiff with Brenner as against the other named defendants. The defendants answered, setting up various defenses, the character of which, in view of the disposition we shall make of this appeal, need not be stated. The case was submitted to a jury upon special issues, and, upon the coming in of the verdict, judgment was rendered for plaintiffs, and defendants have appealed.

One of the hotly contested issues of fact on the trial was whether, at the time Henry Brenner signed the deed conveying the property in controversy to Carrie Brown, he was mentally incompetent. The court submitted this issue to the jury as follows: "Sixth issue: If in answer to the first issue you find that the purported deed from Henry Brenner to Carrie Brown, therein inquired about, was not a forgery, then and only in such event you will answer this question: Did Henry Brenner have sufficient mental capacity to know and understand the nature and result of the transaction of making and executing the said deed at the time same was made and executed?" To which question the jury answered, "No."

[1] Appellants' first assignment of error is as follows: "The court erred in refusing to grant defendants Frosch, Heidingsfelder, and Watson's amended motion for a new trial." That this assignment is too general to authorize or require consideration is too well settled to require the citation of authorities.

[2] The second assignment complains that the court erred in refusing to grant said defendants a new trial because the answer to the jury to the sixth special issue, above quoted, is against the preponderance of the evidence, and there was no evidence, or not sufficient evidence, to warrant the jury in answering the question in the negative. Upon this issue the following is part of the evidence introduced:

Dr. G. W. Larendon testified: "My present profession is physician and surgeon. I have been so occupied since 1889, about 23 years, here in the city of Houston, practicing medicine since 1889. I am city physician at the present time. I have held that position 12 or 15 years. I have also been county health officer several times. My practice has brought me in contact with patients suffering from mental alienation to quite an extent, years' experience with them. I am investigating cases of mental alienation every week or two throughout my work as city and county health officer; we see them. I knew Mr. Brenner during his lifetime very

well. I have known Mr. Brenner about 20 years. I did have an opportunity during Mr. Brenner's lifetime to observe him in his acts and conduct or business transactions. I was his physician. I attended to him during the life of my father and after his death continuously up to his last illness. I attended to him off and on for 15 years. I was attending him during his last few months of his lifetime; up to the last week, I lost track of him. I did notice peculiarities of conduct or of conversation which would indicate his mental condition. He was suffering with senile dementia, insanity due to old age. It had been coming on him for years. That is a progressing disease, the result of age. This disease does affect a man as to his soundness of mind; it makes them incompetent. My professional opinion in regard to Mr. Brenner, during the last three months of his lifetime, is that he was of unsound mind. He did not have sufficient mental capacity during the last three months of his lifetime to understand ordinary business transactions. I am a graduate of Jefferson College of Philadelphia, class of 1889. In the course of my work as health officer I have been called upon to examine hundreds of cases of insanity. I am still so employed in examining such cases as they come up, but not in court proceedings. I come in contact with them constantly as health officer. Old man Brenner died February 12, 1911, just a year ago. I make this statement under oath, as my judgment as a physician, from what I knew of him and my general knowledge of such cases, that he did not have mental capacity to transact business affairs understandingly; that he was of unsound mind then and a year prior to that. He was in my office every day for a year, most every day or every other day, for the past year. He never left me. In my opinion I think he was of unsound mind prior to his death in February, 1912, of such character that he was incapable of transacting any business or understanding any business transactions for about a year or 18 months. He was mentally unsound prior to that time. I could not say how long prior to a year or 18 months before his death, but he has been going from bad to worse for years. From actual observation with him for years that I know of, he has been of such mental condition. I do not think he did understand any business dealings. I do not think he was capable of transacting any business; not capable of attending to his own business."

Judge J. A. Breeding, a practicing lawyer of the Houston bar, testified: "I have resided in the city of Houston very close to 32 years. It will be 32 years in June. I am a practicing lawyer. I was acquainted with Henry Brenner in his lifetime. I first knew Henry Brenner, I think it was, about 1885. I was never very intimate with him, but frequently he would consult with me or come to my office on business, and we always spoke when

we passed by. I never was at his house, and he never was at mine, but I knew him just like I know hundreds of other people that I meet daily almost. He has consulted me on some of his matters. I would not be accurate as to the time prior to his death that I had my last conference with him, but it strikes me about five or six months. During my acquaintanceship with him I did have occasion to ascertain whether he had any peculiarities or not. The old man in his late years, well, I will say three or four years of his life, became to my mind very peculiar. He would come to my office and ask me questions or consult me about matters, and, when I would give the information that he wanted, he would sit there; he would pick at himself this way (indicating); and directly he would seem to wake up and go out of the office and come back and ask me what it was he was talking about when he was in before. I had him to do that three or four times. I know that the old man had a mania for making wills. I know of three he made, and he applied to me to make a couple more, but I told him I thought it was useless. Outside of those I had connection with I know of one that Mr. Heidingsfelder made, or attempted to make. From my observation of this man my judgment is that he was not competent in mind to transact business, and I refused to transact business for him on that account."

There was other testimony along the same line, notably that of plaintiff, W. F. Brenner, but that which we have quoted is sufficient to raise the issue and require its submission to the jury and to warrant the jury in answering the question in the negative.

[3, 4] A second proposition under the second assignment is to the effect that the court erred in permitting the witnesses Larendon, Breeding, and Brenner to testify that in their opinion Henry Brenner did not have mental capacity to transact business, and that in their opinion he was not in his right mind. This proposition is clearly not germane to the assignment, which complains that the evidence of these witnesses did not authorize the jury to answer the sixth special issue in the negative. Besides this there is nothing in appellants' brief to indicate that any objection was interposed to this testimony when it was offered in the court below, nor are any bills of exception referred to as having been taken to the action of the court in permitting the witnesses to testify. The proposition cannot be considered. The second assignment is overruled.

[5] By their third assignment of error appellants complain that the court erred in not granting to them a new trial because the evidence was insufficient to warrant the jury in answering in the affirmative the seventh special issue submitted by the court, which is as follows: "If you answer the preceding issue, and in the negative, then and only in such event you will answer this question: Was the want of mental capacity in Henry Brenner to make the deed in question known to defendants Frosch and Heidingsfelder, or either of them, at the time of the execution and delivery of the purported deed from Carrie Brown to Frosch, if any such deed you find was executed and delivered?" The proposition under this assignment is as follows: "The plaintiff in this cause, having introduced in the trial of this cause several witnesses in their behalf, who had known Henry Brenner—some of them for several years, and one of the said witnesses being Camille Blue, the intervener herein, and who attended to the wants of Henry Brenner for a term of some months next preceding his death, and who attended to his burial, and she and each of said witnesses having had opportunities of seeing the acts and the deeds of said Henry Brenner in the conduct of his business transactions, and the said acts and deeds as detailed in evidence by the said witnesses to the jury, proving clearly that Henry Brenner, on and before the 1st of December, 1910, was in full possession of his mental faculties and fully able to transact business up and until his death, then it was fundamental error of law for the court to render the said judgment it did render herein, canceling the two said deeds under which the defendant O. Frosch now holds the title to the property in controversy in this suit, and it was the duty of the court to have directed a verdict for the defendants." The proposition is not germane to the assignment, and, even if it were, the testimony set out in the statement in support of the assignment does not remotely refer to knowledge or want of knowledge on the part of defendants Frosch and Heidingsfelder of the want of mental capacity of Henry Brenner at the time the deed to Carrie Brown was signed. There is no merit in the contention that the assignment points out fundamental error. Appellees object to the consideration of this assignment, and the objection must be sustained.

[6] The jury found that Carrie Brown paid to Henry Brenner $1,500 as the purchase price of the lots, and this was the consideration recited in the deed. Appellants by their fourth assignment contend in effect that, the jury having found that said Brenner at the time he made the deed to Carrie Brown was mentally incompetent, the court should not have rendered judgment for appellees, unless plaintiffs should place the said Carrie Brown in statu quo by restoring to her the amount of money she so paid Henry Brenner for the land, and that the court should have granted defendants' motion for a new trial in order that plaintiff and intervening plaintiff might amend their pleadings and offer to do equity.

The jury found that, at the time Henry Brenner executed the deed to Carrie Brown and received the recited consideration, he

was mentally incompetent. There is no evidence in the record that Henry Brenner had any money at the time of his death except $125 (and this was the proceeds of collection of rents of property belonging to him and now in controversy), nor that he had purchased necessaries with the $1,500, nor that it had been invested by or for him for the benefit of his estate, nor that it was still on hand. To entitle appellants to this character of relief it was incumbent upon them to show by their pleadings for affirmative relief, and to establish by evidence, that the money received by Henry Brenner from Carrie Brown was expended for necessaries, 'or that it was on hand at the time of his death, or that it had been invested by or for him for the benefit of his' estate. In the absence of such proof, plaintiffs would not be required to return the consideration. Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849; Williams v. Sapieha, 94 Tex. 436, 61 S. W. 115; Bank v. McGinty, 29 Tex. Civ. App. 539, 69 S. W. 495, on page 496, and authorities cited. The point raised by this assignment was not made an issue upon the trial in the court below either by the pleadings or the evidence; hence the assignment points out no error and is overruled.

The record discloses no reversible error, and the judgment of the court below is affirmed.

Affirmed.