**HOUSTON LAND & TRUST CO. et al. v. SHELDON.**

No. 1226.

Court of Civil Appeals of Texas. Eastland.

Feb. 9, 1934.

Rehearing Denied March 16, 1934.

Blanchard & Woodul, W. P. Hamblen, and Robt. Ring, all of Houston, for plaintiffs in error.

Boyle, Wheeler, Gresham & Terrell, of San Antonio, for defendant in error.

FUNDERBURK, Justice.

On September 19, 1930, Mrs. Nellie Howard Burgle Bates, while insane (having become so, as found by the court, on August 28, 1930), executed a note to Houston Land & Trust Company (hereinafter called the bank) for the principal sum of $5,000 due April 5, 1932, bearing 7 per cent. interest. At the same time, as collateral security for said note, she indorsed a $15,000 note secured by vendor's lien and deed of trust lien on certain lands in San Antonio, with transfer of said note and liens; said collateral note being payable to her deceased mother, but owned by her as sole devisee of her mother's estate. The $5,000 note was given for borrowed money paid by a $4,936.27 check, drawn to the order of Mrs. Nellie B. Bates. The amount named in the check represented the full amount of the loan, less $63.73 expenses incurred by the bank in connection with making the loan. The entire transaction, including the receipt of the proceeds of said check, was handled by L. A. Adamson, purporting to act throughout as the attorney and business manager for Mrs. Bates.

Subsequently to the execution of said note, Mrs. Bates was duly adjudged insane, and this suit was brought by Joe S. Sheldon, her guardian, against said bank and L. A. Adamson to cancel the $5,000 note and the transfer and indorsement of said $15,000 note, as well as the transfer of the liens securing same, upon the ground of her mental incapacity to contract. The only relief sought by the suit, other than an alternative claim for damages against Adamson alone, was the cancellation of said instruments (including cancellation of Mrs. Bates' indorsement of the collateral note) and the recovery of judgment against said bank of a sum (shown to be $350) representing interest payments on said $5,000 note, which had been collected as interest due on said collateral note and thus appropriated. Since no other relief was sought, except in the alternative, and the judgment decreed cancellation as prayed, the alternative cause of action averred as against Adamson becomes unimportant upon any question presented for our decision.

Plaintiff in the statement of his cause of action for cancellation alleged that his ward never at any time received any part of the proceeds of said $5,000 note, but that same was received and wrongfully converted by said Adamson. Plaintiff's petition charged the commission of fraud by Adamson. The alleged fraud consisted of the facts that Adamson knew of Mrs. Bates' mental incapacity, and with such knowledge procured her to execute said instruments and to make said indorsement.

Upon a nonjury trial the court decreed the cancellation of the instruments as prayed for, but gave the bank judgment against plaintiff

for $1,477.21, with interest thereon at the rate of 6 per cent. per annum from October 5, 1931. Said judgment also declared the existence of an equitable lien in favor of said defendant upon the $15,000 collateral note, but further provided that the judgment and said lien should be enforced in the probate court. Recovery of the said sum of $1,477.21 was awarded to the bank upon the theory that same, plus $350 which had been collected as interest on the collateral note and applied in payment of interest on the $5,000 note aggregating $1,727.25, was the amount of the proceeds of said $5,000 note which had in fact been used by Adamson in providing necessaries for plaintiff's ward. The judgment awarded defendant bank recovery against Adamson upon its cross-action for $3,272.73, being the difference between the total proceeds of said $5,000 note and the said sum of $1,727.25, together with interest, costs, etc.

Both defendants have brought the case here by writs of error.

The first of several questions presented arises out of a contention to the effect that the trial court erred in not finding that the sum of $2,500 of the proceeds of the $5,000 note sought to be canceled was expended by Mrs. Bates for necessaries, in that it was conclusively shown that such sum was used to pay and discharge a debt in that amount for legal services which constituted a charge against the estate of Mrs. Burgle, deceased, devised to Mrs. Bates, and which amount the latter, prior to the time the court found her to have become insane, had agreed was a proper and reasonable charge.

A proper consideration of the case and determination of the questions sought to be presented by the assignments of error are complicated by what we conceive to be certain errors of a more or less fundamental nature, resulting from the case having been tried upon incorrect theories, not directly challenged by the plaintiffs in error. It is deemed advisable to deal with these matters preliminarily.

■ The judgment, among other things, awards the bank recovery against the guardian of $1,477.21, with a lien on the collateral $15,000 note, and with provision that the judgment and lien be enforced in probate court. There were no pleadings to support that part of the judgment. There were no pleadings which would support a judgment absolutely awarding the cancellation sought and at the same time awarding the bank a recovery against plaintiff of $1,477.21, or any other

amount. The only cause of action alleged by plaintiff against the bank was one for cancellation and for the recovery of a sum (shown to be $350) received as interest paid on the $15,000 collateral note and appropriated in payment of interest on the $5,000 note. The bank alleged no counterclaim or cross-action against plaintiff for any sum. The nearest approach to such a subject-matter to be found in the bank's pleadings is the following: "* * * This defendant says that it is informed and believes, and so believing charges the fact to be that the whole amount of said sum of $5,000 was expended for the use and benefit of Nellie Howard Burgle Bates, in payment of her care, upkeep and expenses and in payment of obligations justly and truly incurred by her, and that she received the full and complete benefit of the same, and that the plaintiff should not be permitted to recover of and from this defendant any sum of money which was paid out by it for the use and benefit of the said Nellie Howard Burgle Bates." This was purely a defensive plea. It was sufficient, no doubt, to tender the issue that plaintiff was not entitled to the cancellation sought, except, at least, upon condition that plaintiff restore the money for which said note was given; it being alleged that same had all been used for necessaries. The declaration that plaintiff should not be permitted to recover of defendant "any sum of money," etc., was evidently inadvertent, since plaintiff was not seeking to recover "any sum of money," except as said before the comparatively small sum of $350 allegedly misappropriated in payment of interest on the $5,000 note.

■ As affecting the right of plaintiff to the cancellation sought against the bank and the duty, if any, to restore all, or any part, of the proceeds of the note, we are of the opinion that plaintiff's petition alleged no facts sufficient to charge Adamson with any fraud that could affect such right or duty. Adamson was not alleged to have any interest in the $5,000 note or the $15,000 collateral note, or the transferred liens securing the latter, and hence no facts were alleged to show any reason for, or right to, a decree of cancellation as to Adamson. The only parties interested in the suit in so far as it was an action for cancellation were the plaintiff and the bank. The only cause of action alleged by plaintiff against Adamson, as said before, was an alternative one for damages, which, because of the court's action in awarding cancellation (the other alternative), passed out of the case for all purposes properly to be considered upon this appeal.

■■ It seems to have been the theory of plaintiff and of the trial court that the fact that, at the time Adamson procured Mrs. Bates to execute the note and transfer in question, she was insane and Adamson knew that fact, showed that Adamson was guilty of fraud. To such a view we are unable to assent. ˎ Fraud as to whom? Mrs. Bates or the bank? It is unimportant as regards the right of cancellation that it may have been fraud against the bank. To be material, it must have been fraud as to Mrs. Bates. Was it fraud as a matter of law if Adamson, as he claimed, being charged as attorney of Mrs. Bates and manager of her estate, with the responsibility of supplying her with the necessaries of life, and having no money for such purpose, borrowed the money by having her execute the $5,000 note and make said transfer, even though it be granted that he knew she was insane? We do not think so. Insane though she were, she could bind her estate for the payment of necessaries. 24 Tex. Jur. 382, § 8. That in doing so she executed the note and transfer in question at the instance of her attorney and without his disclosing to the bank the fact of her incapacity certainly in itself shows no fraud of the attorney, at least as against his client. If afterwards, through errors ˊ of judgment or wrong motive—it is immaterial which—he used part of the fund for other purposes than to supply her with necessaries and converted it, that fact is important only as affecting plaintiff's obligation to make restoration as a condition to the right of cancellation. The obligation to restore would be limited to the amount used for her benefit.

The trial court was of the opinion that the burden of proof was upon the bank to show that the consideration given for the note was used for necessaries, and, if less than all was so used, the amount thereof. That view, it must be admitted, is supported by decisions in the following cases: Rowan v. Hodges (Tex. Civ. App.) 175 S. W. 847; Brown v. Brenner (Tex. Civ. App.) 161 S. W. 14; Jones v. Meyer (Tex. Civ. App.) 248 S. W. 777; Shaw v. Gillespie (Tex. Civ. App.) 270 S. W. 1043; Wisdom v. Peek (Tex. Civ. App.) 220 S. W. 210; Donaldson v. Meyer (Tex. Com. App.) 261 S. W. 369; Smith v. Thornhill (Tex. Civ. App.) 12 S.W.(2d) 625.

If this were a suit, at law, by the bank against Mrs. Bates to recover upon the note, a plea and proof of insanity would, no doubt, constitute, prima facie, a complete defense to any liability on the note. In such case for its protection the bank would be under the necessity of pleading and proving what amount of the consideration paid for the note, if any, had been used for necessaries, and would be limited to a recovery of such amount. We are also of the opinion that even in a suit like this, for cancellation, if the defendant did not resist cancellation on the ground that the right thereto was conditional upon restoration of the value of benefits received under the contract, such an attitude would amount to a rescission by consent. The defendant in such case would, nevertheless, have a cause of action for recovery of any part of the consideration used for the benefit of the incompetent, and would have the burden of pleading and proving that the consideration was so used, and, if less than all, the amount thereof. This would involve an independent suit, and would have to be prosecuted as such, or as a cross-action. It is evidently upon such a theory that a money judgment in this case was rendered for the bank. But, as we have said, this is not such a case as the one supposed, because there was no pleading of any cross-action by the bank as against the plaintiff, and the bank did contest plaintiff's right to cancellation without restoration of benefits.

Would the rule admittedly applicable in the supposed cases apply to a case like this where the plaintiff is not defending against a legal liability on the note, and is not claiming a rescission conceded by the adverse party, but is appealing to a court of equity to cancel obligations valid on their face and importing consideration on the ground of incapacity to contract?

■ Unquestionably the maxim applies that he who seeks equity must do equity. The *offer* to do equity within the meaning of the maxim is a matter of pleading, but the *doing of equity* is a condition upon which the relief, if any, is to be granted. A general rule is stated as follows: "The great weight of authority is, however, to the effect that where a contract with an insane person has been entered into in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity, and before an adjudication of insanity, and has been executed in whole or in part, it will not be set aside unless the parties can be restored to their original position. Such contracts are enforced against the insane person, not so much because they possess the legal essential of consent as because by means of an apparent contract he has gained an advantage or benefit that cannot be restored, and that therefore it would be inequitable to permit him or those in privity with him to repudiate it." 14 R.ˎ

**800**

C. L. p. 584, § 40; 9 C. J. p. 1215, § 108; 24 Tex. Jur. p. 384, § 9.

■ This is not a correct statement of the law as it is now interpreted by the courts of this state. It is quoted here to aid in a better understanding of what the law is now by directing attention to the changes that have taken place. The principles of law applicable to insane persons are just the same, so far as our investigation reveals, as those applicable to minors. If so, of course, decisions dealing with the rights of minors and conditions and limitations upon such rights, particularly in reference to the cancellation of contracts, are equally applicable to insane persons. It is interesting, therefore, to note that as late as the decision in Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 662, 47 L. R. A. 326, 77 Am. St. Rep. 849, it was declared, in harmony with the foregoing quotation, to be a general rule "that an attempt by the maker of a deed to disaffirm it, on the ground that it was executed while he was under the disability of minority, must, in order to be successful, be accompanied by a restoration of the *consideration* received for the property conveyed." (Italics ours.) In support of that statement of a general rule, the court cited: Cummings v. Powell, 8 Tex. 88; Womack v. Womack, 8 Tex. 417, 58 Am. Dec. 119; Kilgore v. Jordan, 17 Tex. 356; Stuart v. Baker, 17 Tex. 421; Bingham v. Barley, 55 Tex. 285, 40 Am. Rep. 801; Graves v. Hickman, 59 Tex. 383; Harris v. Musgrove, 59 Tex. 403; Vogelsang v. Null, 67 Tex. 465, 3 S. W. 451; Wade v. Love, 69 Tex. 522, 7 S. W. 225; Ferguson v. H., E. & W. T. Ry. Co., 73 Tex. 344, 11 S. W. 347; H., E. & W. T. Ry. Co. v. Ferguson, 73 Tex. 349, 13 S. W. 57.

It was thus reaffirmed as a general rule in this state that a minor, and therefore also (as we have said) an insane person, as a condition upon which the right of cancellation on the ground of incapacity to contract exists, is required to restore the *consideration* received. Bullock v. Sprowls, supra, merely declared an exception to this general rule. One exception had previously been recognized in Vogelsang v. Null, supra, to the effect that the obligation to restore the consideration as a condition upon the right of cancellation did not exist when no consideration had been received. The further exception recognized in Bullock v. Sprowls was to the effect that, even where the consideration had been received, the obligation to·restore does not extend to any part thereof not at the time of disaffirmance in the possession, or within the

control of, the incompetent, or which had not been used for his benefit. (The word "benefit" will be used in the sense meaning the reasonable value of necessaries, and the payment of legal charges against the property of the incompetent, or payments made for its protection, as referred to in said decision and others like Searcy v. Hunter, 81 Tex. 644, 17 S. W. 372, 373, 26 Am. St. Rep. 837; Folts v. Ferguson, 77 Tex. 301, 13 S. W. 1037; Westbrook v. Adams (Tex. Civ. App.) 17 S. W.(2d) 116; First National Bank v. McGinty, 29 Tex. Civ. App. 539, 69 S. W. 495; Askey v. Williams, 74 Tex. 294, 11 S. W. 1101, 5 L. R. A. 176.) Said general rule, with the modification thereof declared in Bullock v. Sprowls, may be embodied in a single proposition as follows: A minor or insane person, as a condition upon his right to cancel a contract because of incapacity, is required to restore the consideration received only to the extent of the part thereof, if any, remaining in his possession, or subject to his control, or the reasonable value of benefits received from such consideration. As to the necessity of making restoration where a beneficial use had been made of a part of the consideration, it was said in Searcy v. Hunter, supra: "That should be made to depend upon the question whether their services (i. e., services of attorneys) were beneficial to the infant or not. If so, the plaintiff should in no event recover *without an offer to pay and the payment of a just and reasonable compensation.*"

It is believed there has been no change in the law as it has always existed, to the effect that the right of cancellation of such a contract on the ground of incapacity is a conditional right as relates to the obligation, where it exists, to make restoration. The changes which have been declared are such as do not affect the conditional nature of the right of cancellation, but rather the degree or amount of restoration which under exceptional circumstances is required to be made.

■■ If we are correct in our conclusions so far, it is obvious that the only circumstances under which the right of cancellation would be unconditional would be when no part of the consideration had ever been received, or, if received, was not in the possession or within the control of the minor or insane person, and had not been used for his benefit. Whose burden would it be in the assertion of a right of cancellation to plead and prove the facts to show that the right claimed is an unconditional right, or, if not unconditional, that the condition exists which

supports the right? Plaintiff herein has pleaded that his ward received no part of the consideration paid by the bank for said $5,000 note. In so pleading, plaintiff was relieved of any obligation to plead an offer to restore anything; that is to say, he pleaded facts to show an unconditional right to cancellation. But would plaintiff simply by so pleading cast the burden upon the bank to prove that the consideration, or some definite part thereof, had been received? It should not require the citation of authority, we think, to support the proposition that no such shifting of the burden of proof would result. In Wade v. Love, 69 Tex. 522, 7 S. W. 225, plaintiff pleaded that no consideration had been received, and thereby sought to be relieved of any obligation to make restoration, but the court said: "A copy of the conveyance to Bates was made a part of the petition, and recited a consideration paid of $500. It was therefore incumbent upon plaintiff to prove, *not only that the sum mentioned was not in fact paid, but also that she had received no other consideration for the land. Having offered to return nothing, she was bound to prove that she had received nothing.*" (Italics ours.) This was but the application of an elementary principle governing the burden of pleading and proof. If a right as it usually exists is one dependent upon a condition, or—what is the same thing —is unconditional only when exceptional circumstances exist, in either case plaintiff, seeking to enforce such right, must, in order to state a right of action, either allege the facts to show the exceptional circumstances or the existence of the condition upon which the right depends. The burden, of course, would be upon him who was required to plead such facts to prove them. Since the decision in Bullock v. Sprowls, supra, proof of an allegation that no consideration had been received would include proof of the fact that no benefit from such consideration had been received. Indeed, such would have been true prior to that decision. In Wade v. Love, supra, as already shown, under a plea of no consideration received, the burden was declared to be upon plaintiff to prove "not only" that consideration, which the terms of the contract imported, "was not in fact paid, but also that she had received no other consideration." Proof of the receipt of no other consideration would necessarily include proof of the receipt of no benefits.

The receipt of the consideration or benefits thereof by plaintiff's ward does not mean the actual manual possession of same in

person. It is true that in Vogelsang v. Null, supra, the court held that receipt of the consideration by an agent who did not pay it over to the infant did not show that the consideration was received by the infant. The undisputed evidence showed that no part of the consideration had been received. But, in the instant case, there was evidence tending to show that perhaps the entire amount of the consideration for the note had been used for the benefit of Mrs. Bates. As before said, the court found that $1,727.25 had been so used. To the extent that the proceeds of the note were used by Adamson for the benefit of Mrs. Bates, the case is precisely the same, we think, as if that amount of the money had been paid to her, and by her personally used for the same purposes. It must be borne in mind that the relation of attorney and client, or principal and agent, is a contractual relation. Such a contract, like the note in question, is not void, but only voidable. That question was not fully settled in this state when Vogelsang v. Null, supra, was decided. See Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115. At any rate, the instant case is more like the later case of Bullock v. Sprowls, wherein it was said: "The question presented is whether or not the plaintiff was required, as a condition of disaffirming his conveyance and recovering the land, to restore a consideration received for it which was not in his possession or control when he arrived at full age, but had been dissipated by him while still a minor. If he is to be required to restore, without inquiry as to the disposition made by him of such consideration, we can see no reason why the exaction should not be a restoration of the whole sum paid by Bullock. He would not, in our opinion, be exempted from this requirement by the principle laid down in Vogelsang v. Null, 67 Tex. 465, 3 S. W. 451. In that case the minor never received the purchase money, but it went into the *hands of, and was appropriated by,* those who joined with her in the conveyance. Here, *while the money was not paid into the minor's hands,* it was paid to Allen, with his consent and in accordance with his agreement. He received it in the way in which he stipulated to receive it. The transaction was, in effect, the *same as if the money had been paid to him, and by him turned over to Allen,* as the price of the interest in the business, *and the question is exactly the same as would have arisen had such been the facts.*" (Italics ours.) Upon the same principle, we think, the conclusion is warranted that where, as here, the consideration is received by the attorney of the in-

competent for the purpose of being used by him for her benefit, it has presumably been so used, and therefore received by the client. To whatever extent the same is in fact used for such purpose, the obligation to restore is just the same as if such payment was actually received by the client and used for the same purposes. This view is in accord with that expressed by the Court of Civil Appeals in Williams v. Sapieha (Tex. Civ. App.) 59 S. W. 947, as stated in 7 Tex. Jur. p. 962, § 47: "* * * where the defendant in good faith paid money to the attorney-in-fact for the plaintiff, the latter may not be excused from the above rule (that is, from the obligation to restore) since in the absence of anything to the contrary it will be presumed that the agent discharged his duty by paying the plaintiff." In the same way, we think, would the presumption obtain that an attorney having possession of moneys belonging to his incompetent client, and being the consideration received for a contract of the incompetent, and whose duty it was under the terms of his employment to use the money for her benefit, did his duty in that respect, nothing to the contrary appearing. Plaintiff seeking a cancellation, and by his pleading having assumed the burden of proving that no part of the consideration was received by his client, cannot discharge that burden merely by evidence to show that it was received by his ward's attorney, without further showing that same was not used for the benefit of said ward, and, if less than all was so used, what part of the whole was not used.

It seems to have been considered that Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115, 116, is authority for the proposition that the burden of proof is upon the bank. In our opinion, the case does not so hold. Question 2 therein certified to the Supreme Court was: "If only voidable [that is, the power of attorney and sale of land thereunder], will the appellant be permitted to rescind the power of attorney and deed made in pursuance thereof, in the absence of an offer to return the purchase price, or otherwise place the purchaser in statu quo?" The court answered: "We answer the second question that the facts stated in connection with the certificate do not show that the lunatic still had in his possession any of the money paid for the land or any property acquired with it, nor that it had been expended for him or by him in the purchase of necessaries. In the absence of such proof, he would not be required to return the consideration received. Bullock v. Sprowls, 93 Tex. 188, 54 S. W. 661, 47 L. R. A. 326 [77 Am. St. Rep. 849]." (Italics ours.) It is apparent that the court made no direct answer to the question certified. The question relates to a matter of pleading, the answer to a matter of evidence. Although the answer is somewhat ambiguous, it does appear to be a reaffirmation of the law as declared in Bullock v. Sprowls, supra. In so far as it can be considered an answer to the question certified, it was about the equivalent of the following: "No, there is no obligation to offer to return all the purchase price. Unless some of it was on hand, or had been used for the purchase of necessaries, there was no duty to return any part of it, and, of course, no necessity for offering in the pleadings to do so." No question of burden of proof was certified. We do not believe that the court by at most a questionable implication meant to overturn the well-settled law as previously many time declared. If this answer be given the meaning attributed to it, the decision would have the effect of abolishing all practical distinctions between void and voidable contracts. A plaintiff in a cancellation suit would not have to plead that no consideration was received, or offer to make any character of restoration. It could easily be possible that a minor who had received the full consideration for his contract, and by trading had increased it tenfold, could, with the money in a lock box or held by some one in trust for him, if such facts were unknown to the other party, cancel the contract by which he had received it all by merely alleging and proving incapacity at the time it was made. We cannot bring ourselves to believe that by at most a debatable implication any such far-reaching change in the law has been wrought.

■ It is our conclusion that the court erred in decreeing cancellation absolutely; that by the terms of the judgment cancellation should have been made conditional upon restoration of the value of benefits. That provision should have been made in the judgment itself for enforcement of such restoration, instead of certifying to the probate court for enforcement.

■ It is further our conclusion that the court should have found the reasonable value of the services of Adamson both to Mrs. Burgle and Mrs. Bates, and have included same in the amount required to be restored as a condition to cancellation; the burden of proof being upon the plaintiff to show what amount of the entire consideration for the note, if any, was not used for the benefit of Mrs. Bates.

In our opinion, it should not have been presumed that Adamson, having possession of the proceeds of the note in the sum of $4,-936.27, and also other money belonging to Mrs. Bates, used such other money in supplying necessaries for his client, rather than the proceeds of the note. The burden was upon plaintiff to show what part, if any, of the proceeds of the note was not used for the benefit of Mrs. Bates.

No fraud of Adamson was either pleaded or proved which would justify the cancellation sought without restoration of the amount of reasonable attorney's fees.

For these reasons, it is our opinion that the judgment should be reversed and the cause remanded, and it is accordingly so ordered.