**ULMER et al. v. JOHN HANCOCK MUT. LIFE INS. CO. et al.**

No. 2249.

Court of Civil Appeals of Texas. Eastland.

Feb. 27, 1942.

Rehearing Denied March 27, 1942.

Scarborough, Yates & Scarborough, of Abilene, and T. R. Odell, of Haskell, for appellants.

E. V. Hardwick and Hubert L. Watson, both of Stamford, Tom Davis, of Haskell, and Spafford & Spafford, of Dallas, for appellees.

FUNDERBURK, Justice.

D. A. Ulmer, by next friend, and Mrs. Eula Ulmer, wife of D. A. Ulmer, brought this suit against John Hancock Mutual Life Insurance Company and J. V. Frizzell to recover 281¾ acres of land. Plaintiffs' petition consisted of the usual allegations in an action of trespass to try title. In the alternative plaintiffs alleged substantially that on February 4, 1937, D. A. Ulmer was insane and "defendant John Hancock Mutual Life Insurance Company fraudulently induced the said D. A. Ulmer to execute and deliver to them an extension agreement [sic] of a purported deed of trust well knowing that the said D. A. Ulmer was incapable of transacting any kind of business or knowing the contents or legal effect of an instrument in writing. That in said instrument it was attempted to take up and extend said deed of trust, dated March 9, 1926 given by J. W. Coleman and wife, Cora Coleman, to Fred P. Hayward, trustee, recorded in the deed records of Haskell County, Texas, in Vol. 30, p. 259. That said extension agreement was intended to, and did, so far as it was capable of doing, supersede the deed of trust against J. W. Coleman and wife, Cora Coleman. That said deed of trust against J. W. Coleman is no longer in force or effect, except as provided in such extension agreement with D. A. Ul-

mer et ux. That said extension agreement is and constitutes a cloud upon the title of plaintiffs' land above described. That the deed of trust J. W. Coleman and wife, Cora Coleman, executed to John Hancock Mutual Life Insurance Company dated March 9, 1926 * * * [as aforesaid] is and constitutes a cloud upon the title of plaintiffs' land above described."

Then follow allegations to the effect that defendant fraudulently induced D. A. Ulmer to sign a rental contract covering said land; without notice to the plaintiffs procured the land to be sold by substitute trustee to the defendant, J. V. Frizzell; that said J. V. Frizzell executed to John Hancock Mutual Life Insurance Company a promissory vendor's lien note for $4,-000, all in fraud of plaintiffs, and constituting clouds upon their title.

The prayer was for judgment for title and possession of the land; and, in the alternative, for cancellation of said instruments and removal of clouds cast thereby upon plaintiffs' title to said land.

In a jury trial the court gave a peremptory instruction to return a verdict for defendants, which being done and judgment rendered accordingly, plaintiffs have appealed. For brevity, appellants will be referred to as plaintiffs, and appellees as defendants; D. A. Ulmer as "Ulmer", and John Hancock Mutual Life Insurance Company as "Insurance Company."

Plaintiffs urge a single ground for the reversal of the judgment and prefaces same with this statement: "The point for adjudication is, Can an insane person extend the payment of a valid lien existing against his property? If he can make such an extension agreement, the trial court was correct in giving an instructed verdict against him for the land. If he cannot make such an agreement, the trustee sale was void and conveyed no title and the appellant was entitled to an instructed verdict."

■ We cannot agree that this is in all respects an accurate statement. We shall assume, without deciding, that it was conclusively established upon the trial that Ulmer at the time of the execution of said extension agreement, as well as at the time he purchased the land, and at all other times possibly material in this inquiry was of unsound mind, rendering him non sui juris. Even so, in our opinion, he showed no right to recover the land or to

cancel any of the instruments sought to be canceled.

■ Passing over the question suggested by the absence of any *plea* of limitation by either of the parties, we are of the opinion that there was no basis in the evidence to support a claim of limitation. After the $6,000 note assumed by Ulmer as part payment of the consideration for the purchase of the land was in default, but before it was barred by limitation, the extension agreement was made. That agreement was not void, but at most only voidable. Williams v. Sapieha, 94 Tex. 430, 61 S.W. 115; Free v. Owen, 131 Tex. 281, 113 S.W.2d 1221; Elston v. Jasper, 45 Tex. 409; Pearson v. Cox, 71 Tex. 246, 9 S.W. 124, 10 Am.St.Rep. 740. Even though as a contract voidable by Ulmer it was binding on the Insurance Company. "According to the view that the contract is voidable only [which, as said before is the view in Texas] it is binding on the other party and cannot be avoided by him." 32 C.J. 736, sec. 513. Hence, from the time of making the extension agreement until the time of default in payment according to the new agreement the Insurance Company had no right to demand payment, either according to the original provisions of the note, or, of course, of the extension agreement. Such was the necessary effect of its being bound by the extension agreement. Limitation does not run during the time there is no existing cause of action. Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025. As affecting the question of limitation, the extension agreement was the same as if Ulmer had executed new notes and a new deed of trust in renewal, but not payment, of the balance due on the $6,000 note. In such case, the rule was declared in Otto v. Halff & Bro., 89 Tex. 384, 34 S.W. 910, 911, 59 Am.St.Rep. 384, as follows: "The rule is established by the great weight of authority in England and the courts of the American states that where a debt exists, and a note is given therefor by the debtor, *the right of action is suspended upon the original consideration until the note becomes due,* and if it is unpaid at that time the creditor may elect to sue upon the original indebtedness, or upon the note, unless the note was accepted as payment of the pre-existing debt." (Italics ours.)

Whether the right of action upon the original debt was by the execution of the renewal notes merely suspended, or by payment was destroyed, limitation did not run during any time there existed no right to enforce payment.

■ In this case, the creditor—the Insurance Company—was not put to the election above noted, for the reason that the only material effect of the extension agreement was to extend the times of payment of the unpaid balance of the original $6,000 note. The nature of the trust declared and the powers of the trustee, enumerated in the deed of trust, remained otherwise unchanged. Hence, when default had occurred according to the extended times of payment, the power of the trustee or substitute trustee to foreclose, by sale, was wholly unaffected by the lapse of time. The fact that if there had been no extension agreement the balance due on the original $6,000 note may have been barred by limitation was immaterial as being a contingency which never happened. As we see it, the non sui juris status of Ulmer had no effect upon any question of limitation possibly involved in the suit.

■ It seems to have been the view of plaintiffs, as shown by the allegations of their petition, that it was a fraud upon Ulmer for the Insurance Company to enter into the extension agreement with him. It is difficult to see how the Insurance Company could benefit by such an agreement. The benefit appears to be entirely for Ulmer. By the agreement, the Insurance Company bound itself to forego its cause of action undoubtedly then existing to sell the property in satisfaction of its debt. The extension agreement considered as a contract, on its face shows, we think, that it was made for the benefit of the community property of the plaintiffs, which the land was shown to be. The trial court, we think, was justified in concluding, as a matter of law, and we approve the conclusion, that no fraud was shown. Houston Land & Trust Co. v. Sheldon, Tex. Civ.App., 69 S.W.2d 796, 800.

■ An essential element of fraud is an injury. Where there is a benefit instead of an injury, there is no fraud.

■ Even if the correctness of the judgment, in the respect challenged, depended upon Ulmer's right to avoid the extension agreement, we are nevertheless of the opinion that the judgment was proper. In so far as the action was one at law, plaintiffs clearly showed no right to re-

cover the land. The only title to the land plaintiffs ever had was equitable as distinguished from legal title. Their title was one showing that their ownership was conditional upon payment of the balance of the $6,000 note (or, at least, a satisfaction or discharge thereof). Such balance was neither paid nor, as we have seen, discharged by the bar of limitation. Hence, plaintiffs' only right of action, if any, was dependent upon their right to have canceled the deed of the substitute trustee to the Insurance Company and the deed of the latter to Frizzell. There was, as we have said, no right of cancellation shown based upon the claim of fraud. If any right of cancellation existed, it was solely because of the mental incapacity of Ulmer.

The only flaw in defendant's legal title to the land was the fact that disregarding the extension agreement, and in the absence of any extension agreement, the trustee's conveyance of the land to the Insurance Company was made after the indebtedness was apparently barred by limitation. Plaintiffs, therefore, in any event were under the necessity of showing a right to cancel the extension agreement. The remedy of cancellation when it exists is equitable. It exists, if at all, subject to the obligation to do equity. Plaintiffs themselves show the receipt by them of a benefit secured by means of the extension agreement. An existing right of the Insurance Company to have the property sold to satisfy its debt was surrendered by it and plaintiffs acquired the new right to pay the debt at a future time, with a less rate of interest, and thereby to free the property from the lien.

Equity imposes conditions upon the legal right of a person non sui juris to avoid his contracts. It is a difficult task to evaluate and reconcile the decisions and to make a full and adequate statement of the governing rule. We shall not attempt to do so here. We have been over this ground before and upon the reasoning and authorities cited reached the following conclusion: "A minor or insane person, as a condition upon his right to cancel a contract because of incapacity, is required to restore the consideration received only to the extent of the part thereof, if any, remaining in his possession, or subject to his control, or the reasonable value of benefits received from such consideration." Houston Land & Trust Co. v. Sheldon,

supra. The extension agreement had no such effect, of course, as to relieve plaintiffs from the burden of paying the debt of the Insurance Company as a condition upon the acquisition by them of legal title to the land. At the time of the execution of the extension agreement, and in the absence thereof, the only way plaintiffs could acquire legal title to the land was to pay the debt. By the extension agreement such condition was not removed, but the time of its performance merely postponed. At the time of the trial, therefore, plaintiffs showed no better right to recover legal title to the land than they had at the time just before the extension agreement was executed. They cannot avoid the effect of the extension agreement without surrendering the advantage they received thereby, which amounts to the same thing as saying they cannot avoid the extension agreement and have legal title to the land adjudged to them without an offer to pay and payment of the debt.

Finally, we consider this question: Suppose Mrs. Ulmer had alone, and as a feme sole, executed the extension agreement? If that would have rendered the property subject to the sale as made, such effect, we think, would not be avoided, or in any way affected, by Ulmer's joining in the execution of the extension agreement.

If Ulmer, because of unsoundness of mind, was without sufficient capacity to contract for an extension of community indebtedness secured by a lien upon the community property, then Mrs. Ulmer, the marital partner, the owner of a half interest in the property subject to its liability to be taken in satisfaction of debts, succeeded to the power to make contracts of a certain kind, including contracts for the preservation of the community property. The property was subject to sale to satisfy a community debt, the payment of which was then in default. The extension agreement rendered such property not subject to sale for a certain time, at least. That effect of the extension agreement was to preserve the community property. We deem it unnecessary to cite decisions in support of the proposition that when the husband, because of permanent separation from his wife, or because of his incarceration in prison, or because of his insanity, is disabled from managing the community property, the wife succeeds as such manager empowered to sell or mortgage such property, to pay debts, and to make contracts

866

for its preservation. Regarding specifically her right to enter into a contract extending the time of payment of the community indebtedness secured by lien upon community property, see Crowder v. McLeod, Tex. Civ.App., 151 S.W. 1166.

For each and all of the reasons stated, it is our conclusion that the judgment should be affirmed, and it is accordingly so ordered.