**WEBB MATERIALS, INC., Appellant,**

v.

**Bateman Bell LACEY, Jr., Appellee.**

No. 14036.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 9, 1963.

Rehearing Denied Feb. 6, 1963.

Mann, Fisher & Castillon, Laredo, for appellant.

Gerald Weatherly, Laredo, Will Wilson, Atty. Gen., Joe A. Osborn, Ben M. Harrison, Asst. Attys. Gen., Austin, for appellee.

POPE, Justice.

This is a double appeal. Plaintiff, Bateman Bell Lacey, Jr., sued Webb Materials, Inc., for damages and rescission of a lease upon grounds of fraud. The jury found the elements of fraud, and the court awarded Lacey $1,750.00 damages. Webb Materials appeals from that judgment, which we must reverse because there is no proof of damages. Lacey appealed from the judgment because the court refused to order a rescission. We affirm that part of the judgment. The State of Texas intervened to claim ownership of an island in the Rio Grande and, upon jury findings, prevailed. Lacey appealed from that judgment. We affirm that part of the judgment.

We shall first discuss the appeal by Webb Materials from the money judgment against it. On August 4, 1959, Lacey was about to execute a lease from himself to

Webb Materials. The lease described an eight-acre tract on the Rio Grande River, north of the City of Laredo, and was for a rental of $360.00 per year. It was to terminate in five years, with options to renew for two like terms. Webb Materials used the leased tract for its gravel business but did not mine any materials from that tract. It did, however, mine gravel from the island. Lacey urged that the lease was induced by fraud, because Webb Materials expressly represented that it would mine no gravel from the nearby island which Lacey, Sr., claimed to own. The jury found that these fraudulent representations were made and were relied upon.

Webb Materials attacks the jury findings that it fraudulently induced Lacey to execute the lease. We need not examine all of those grounds, because in any event, Lacey did not prove any damages caused by the fraud. "Damages" was obscurely defined, but the term was apparently intended to mean the difference between the reasonable rental value of the leased tract used for the purposes represented and the reasonable rental value of the land for the use to which it was actually put. We fail to find any proof of the latter element.

The reasonable rental value of the land, if Webb Materials had made known that it intended to mine gravel from the island in the river, was not proved. Lacey, the lessor, testified that he would have charged more if he had known Webb Materials' true intent. Beyond that he provided no evidence. Lessor's father, Bateman Bell Lacey, Sr., testified that the tract had always been used for farming and pasturage until this lease was made to Webb Materials. He said that he would have advised his son not to lease the tract for $30.00 a month, or $360.00 a year, if he had known that Webb Materials was going to mine gravel from the island. This does not prove the rental value of the leased tract. Ross Watkins, vice-president of Webb Materials, testified that the company had previously used a site owned by another person, inside the City of Laredo, free of charge, until the dust and operations became so distasteful that the owner asked the company to move. After the company was asked to move, a charge of $150.00 per month was made, and the company then left. This is no proof of the rental value of Lacey's eight-acre country tract several miles away. T. A. Bunn, a realtor, testified that the market value of the Lacey tract was a maximum of $1,600.00. He did not testify about rental values. If there is any evidence of rental values, we have failed to find it in the record. The jury reached its verdict by speculation, not from evidence, and the judgment for damages must be reversed.

■ The trial court correctly denied plaintiff's prayer for rescission. One who enters into a contract that is induced by fraud, and who after knowledge of the fraud accepts the benefits of the contract, waives the right of rescission. Rosenbaum v. Texas Bldg. & Mortg. Co., 140 Tex. 325, 167 S.W.2d 506; Powell v. Rockow, 127 Tex. 209, 92 S.W.2d 437; Grabenheimer v. Blum, 63 Tex. 369; Witherspoon Oil Co. v. Randolph, Tex.Com.App., 298 S.W. 520; J. B. Colt Co. v. Head, Tex.Com.App., 292 S.W. 198; Roy Klossner Co. v. McIntire, Tex.Civ.App., 301 S.W.2d 197; 26 Tex.Jur. 2d, Fraud & Deceit, § 89. Plaintiff waived his right to rescission. The contract was executed on August 4, 1959. Within sixty days after he signed the lease, he knew the facts upon which he grounds his fraud. At that time he had collected the first and last years' rentals in advance, and did not tender them back nor take any steps to disaffirm. Webb Materials' operations were open and plaintiff saw them all. He knew a bridge was built from the mainland to the island, that scores of trucks operated to haul thousands of loads of gravel from the island. In 1960 he received another year's advance rental. In 1961 he did the same. He said nothing about rescission, even when he filed his original petition. He asserted grounds for recovery of damages based on waste and surface damage only. It was not until December 12, 1961,

that fraud and rescission were mentioned. He did this in his amended petition. For more than two years, plaintiff accepted all the benefits under the contract after he was in possession of the facts which he claims were fraudulent inducements. See, Anderson v. Wise, Tex.Civ.App., 345 S.W.2d 803, affirmed, Wise v. Anderson, Tex., 359 S.W.2d 876.

■ The final point in the case concerns the claim to a forty-acre island in the Rio Grande River. Lacey, Sr., conveyed this island to Lacey, Jr., after the date of the lease to Webb Materials. The State of Texas intervened to assert ownership of the tract as an island. Whether the tract was or was not an island is the issue upon which the parties met in the trial court. Both tried that issue upon theories of the common law. While this Court has some doubts whether the common law applies instead of the Spanish Law, this appeal will be determined by the same common-law theory upon which the case was tried. State of California Dept. of Mental Hygiene v. Bank of Southwest Nat. Ass'n, Tex.Civ.App., 354 S.W.2d 576, 581; Sorrells v. Coffield, 144 Tex. 31, 187 S.W.2d 980. Moreover, plaintiff, Lacey, proved and relied only upon patents from the State in 1852 and 1879. The trial court first asked the jury whether, at the time the patents were issued, the island was formed on part of the bed of the Rio Grande. The court also asked, as plaintiff, Lacey, contended, if the island was formed by digging and blasting a channel between the island and the mainland. It was Lacey's contention that the island arose in the river after the date of the patents, and attached itself to the bank which he owned, and that he owned the forty-acre tract. The jury found instead, that the island had already formed in the bed of the river at the time of the patents. Lacey also contended that the "island" was in fact a peninsula attached to his eight-acre tract, and that an island was artificially created by digging a channel between it and the river bank. In our opinion, the finding that the island was not artificially created is supported by the evidence, and the finding is not against the great and overwhelming weight of the evidence.

The real controversy below, and in this Court, was over the trial court's issue about the island rising in the river bed. The parties disagreed about the proper definition of "island." The court, on State's request, defined "bed of the Rio Grande" in this manner:

"The 'bed of the Rio Grande,' as used in this charge, is meant that portion of its soil which is alternately covered and left bare as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean state during an entire year, without reference to extra freshets of the winter or spring or the extreme drouths of the summer or autumn."

Lacey objected and requested this definition of "island":

"The term 'island' as here used, means that the same must be of a permanent character, not merely surrounded by water when the river is high, but permanently surrounded by a channel of the river, and not subject to overflow by a rise in the river and connected with the land when the water is low."

■ City of Victoria v. Schott, 9 Tex. Civ.App. 332, 29 S.W. 681, is authority for the proposition that islands in the bed of a river at the time of the grant, as well as those arising in the bed thereafter, belong to the State. The definition used by the court was first stated in Motl v. Boyd, 116 Tex. 82, 286 S.W. 458, and was re-affirmed in Maufrais v. State, 142 Tex. 559, 180 S. W.2d 144. We consider the trial court's approach in accord with accepted definitions. From the two jury findings, therefore, the island was neither included in the original patent, nor was it artificially created by excavations.

We have examined the other points and overrule them. That portion of the judgment which awarded Lacey damages grounded upon fraud is reversed, and rendered that Lacey take nothing. In all other respects the judgment is affirmed.