**FEATHERLAX CORPORATION, Appellant,**

v.

**Dr. M. H. CHANDLER et al., Appellees.**

No. 243.

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 30, 1966.

Rehearing Denied Feb. 9, 1967.

Second Motion for Rehearing Denied March 9, 1967.

784 

Kelley, Looney, McLean, & Littleton, Jackson Littleton, Edinburg, for appellant.

Sidney P. Chandler, Corpus Christi, for appellees.

## OPINION

GREEN, Chief Justice.

This suit, filed August 7, 1961, was brought by appellant Featherlax Corporation against appellees M. H. Chandler and Sidney P. Chandler to determine and enforce rights claimed under a written contract between appellant's assignor Harold L. Stern and appellee M. H. Chandler, dated April 11, 1953. Trial before the court and jury was had on plaintiff's second amended original petition filed May 8, 1965, and defendants' first amended original answer filed October 10, 1962. From a judgment favorable to defendants, rendered after jury verdict, plaintiff has appealed to this court.

Dr. M. H. Chandler is and has been for many years a dentist, practicing that profession in Weslaco, Texas. Sidney P. Chandler, his brother, is and has been for many years an attorney at law, with his office in Corpus Christi. Harold L. Stern, assignor to Featherlax Corporation of the contract in question, is and has been during all the time here involved head of Stern Dental Laboratory Company, a corporation which constructed on prescription dental prosthesis or replacement teeth and dental appliances. He also was at all such times president of appellant Featherlax Corporation, which was organized in the early part of 1953.

The contract which is the subject matter of this suit, dated April 11, 1953, signed by Dr. M. H. Chandler as Party of the First Part and Harold L. Stern as Party of the Second Part, states:

"THAT WHEREAS, application for letters patent of the United States have been made by Party of the First Part being patent application No. 346817 of a Teeth Protector on the 6th day of April A.D.

1953, and the said Party of the First Part is the sole owner of all rights incident thereto, and,

WHEREAS, the Party of the Second Part is desirous of obtaining all rights in connection with the production, manufacturing and distributing of said Teeth Protectors.

NOW, THEREFORE, the parties have agreed as follows: * * * ."

Paragraph numbered 1 provides that in consideration of the royalties and agreements by Stern, M. H. Chandler grants unto him, his heirs and assigns, "the sole and exclusive right, privilege and licenses universally to produce, manufacture and distribute Teeth Protectors based upon and containing the articles for which a patent application has been made by the Party of the First Part, together with all improvements and any and all other items pertaining to Dental Protection which has been or may be developed and/or invented by, through or under the patentees to the end of the term for which any letters patent are granted concerning or pertaining to Dental Protectors."

Paragraph 2 provides that "the Party of the Second Part shall pay to Party of the First Part, to-wit: Dr. M. H. Chandler, royalties in the amount of twenty-five (25) cents for each item sold in accordance with this agreement by the Party of the Second Part, his heirs, successors or assigns * * * ."

Paragraph 14 states that Stern "shall be at liberty to grant sublicenses hereunder to produce, manufacture and/or sell any items contemplated herein universally. Party of the Second Part and his heirs shall have the right to assign this agreement and Party of the First Part may assign his interest herein * * * ."

Paragraph 15 provides that "It is understood by and between the parties hereto that the Party of the Second Part contemplates transfering his rights in this agreement to a corporation, that upon said transfer and assignment being completed the corporation assignee will be deemed to be the Party of the Second Part of this agreement and all rights, privileges and liabilities of the Party of the Second Part will become the rights, privileges and liabilities of the corporation."

Paragraph 17 reads: "It is further understood and Party of the Second Part is hereby given an option and right of first refusal to purchase the patent rights of the Party of the First Part, in the event that the Party of the First Part desires to sell the same or any part hereof, and the price of sale, if any, shall be the same to the Party of the Second Part as any bona fide offer made to Party of the First Part by a third party."

By written instrument dated November 15, 1953, Harold L. Stern granted and assigned to appellant Featherlax Corporation all of the rights acquired by him under the terms of the contract of April 11, 1953, between Dr. M. H. Chandler and Stern. Authority for such assignment was expressly given in paragraph 15.

In so far as the points of error raised on this appeal are concerned, plaintiff's second amended original petition, which was his trial pleading, was two-fold in nature, seeking (1) a cancellation of the contract of April 11, 1953 upon the basis of fraud in its inducement, and (2) a determination of a breach by defendants of the purchase refusal provision of the contract (paragraph 17) and an enforcement of the resulting rights of the plaintiff. Although the statement of facts contains 1357 pages, and in addition there are approximately 450 written exhibits filed in this court, much, if not most of this evidence does not concern the points we are called upon to decide, and we shall try to restrict ourselves to the testimony we consider material to the issues involved on appeal.

At the start, we are met by a motion filed in this court by appellees on May 5, 1966, within 30 days after the filing of the transcript and statement of facts, to strike all or a portion of the record. In this motion,

appellees call attention to the fact that the transcript is filed in two volumes, the first containing instruments filed in connection with the case as finally tried, and the second consisting of instruments concerning only a cross-action of appellees which was dismissed long prior to the trial of this cause. We agree that this second transcript is in no way material to the issues raised on this appeal, and though it is on file in this case, we have not concerned ourselves with it in considering our disposition of the appeal. Appellees' objections to certain instruments and documents contained in the first volume of the transcript are overruled; we have considered only the instruments and documents which we find to be properly pertinent to the appealed cause.

■ Appellees complain of the filing in this court of the statement of facts because, so they state, they had no adequate time in which to review and decide whether or not to approve same and the trial judge's approval was a qualified approval. The facts show that the trial court on March 30, 1966 signed the certificate at the end of the statement of facts evidencing an absolute and unconditional approval thereof. He thereupon delivered same to appellant's attorney, and sent a letter to the district clerk asking him to make a docket entry that he had approved the statement of facts on March 30, 1966, "with the agreement and understanding that such signature will not lessen the time for approval by counsel for defendant as to such Statement of Facts." Appellant's attorney on April 4th delivered the statement of facts to appellees' lawyer in Corpus Christi with the request that since April 15 was the last day to file same in the Court of Civil Appeals he approve and file same in said court not later than April 14. On April 12, appellees' counsel returned the entire statement of facts to appellant's lawyer without approving the same. On that same day it was filed in the appellate court by appellant's attorney. The record does not disclose any objections made by appellees that the statement of facts does not truly disclose what occurred in the trial

court. There is no showing that the trial court's approval lessened the time for approval by counsel for defendants. The clerk of this court properly accepted such statement of facts for filing, and appellees' motion to strike is overruled. Rule 377, Texas Rules of Civil Procedure.

The evidence discloses that by the close of the year 1952 Dr. M. H. Chandler had conceived or invented a device to be worn in the mouth during contact athletic games (football, for instance) to protect the teeth, which will be designated as a Teeth Protector. Shortly prior to the execution of the contract here involved, he had applied for a patent on such device. In March, 1953 the two Chandlers went to Houston and had conferences with Stern, some of his associates, and his lawyer, Mr. Aaron Hessel, with reference to the execution of a contract such as the one which was subsequently entered into by Stern and Dr. Chandler. In these conferences, as well as in all other transactions between the parties, Sidney Chandler acted as his brother's lawyer. These discussions ultimately led to the contract between the parties of April 11, 1953. We shall hereafter at times refer to the two Chandlers as M. H. and Sidney.

Both M. H. and Sidney testified in the trial court that prior to the discussions leading to the contract M. H. had orally assigned to Sidney a quarter interest in the invention and the royalties as attorney fees in consideration of Sidney's services as his lawyer in all legal matters in connection with the Teeth Protector. They further testified that they discussed Sidney's ownership of said quarter interest with Stern and his attorney prior to the execution of the contract. This was denied by Stern and Hessel, both of whom testified that before and at the time the contract was signed M. H. stated and represented to them that he was the sole owner of all rights in and to the Teeth Protector and the application for the patent, as in the contract he represented himself to be, and that Stern would not have

signed if he had known of Sidney's interest. Stern further testified that the first information he received of the defendants' claim that Sidney was a co-owner of the Teeth Protector and the patent rights thereto when the contract was signed was in defendant's original answer filed in this cause on August 25, 1961.

The patent on the Teeth Protector was granted by the U. S. Patent Office in the latter part of 1954.

From the period of the negotiations leading to the contract until the present time Sidney has served actively as his brother's lawyer in all legal and business matters pertaining to the Teeth Protector, the contract, the patent rights, infringement matters, correspondence with appellant, etc. Stern knew from the beginning that Sidney was attorney for M. H. in all matters connected with the invention and contract, and testified that he knew as early as 1953 that Sidney was receiving from M. H. a portion of the royalties as attorney fees.

### FRAUD

Appellants' first point of error is that the trial court erred in refusing judgment cancelling the contract of April 11, 1953 since the jury verdict established a basic and fundamental fraud by appellees in the inducement of such contract. On the question of fraud, the jury found that (1) at and prior to the execution of the contract of April 11, 1953 M. H. Chandler represented to Harold L. Stern that he was the sole owner of the patent application in question, (2) which representation was false, (4) Stern relied upon such representation, and (5) would not have executed the contract had he known that Sidney P. Chandler owned an interest in the patent application. The jury also found, in answer to Special Issue No. 3, that the representation was not made by M. H. Chandler with the knowledge that it was false. However, this finding can be ignored as immaterial since in order to constitute actionable fraud, knowledge by the maker of the false misrepresentation of its falsity is not a necessary element. 25 Tex.Jur.2d, Fraud and Deceit, § 17, p. 632, et seq.; 26 Tex.Jur.2d § 117, p. 86, et seq.; Wilson v. Jones, Tex.Com., 45 S.W.2d 572; Stroud v. Pechacek, Tex.Civ.App., 120 S. W.2d 626; Miller v. Latham, Tex.Civ.App., 276 S.W.2d 858, 866, writ ref., n. r. e.

Even though special issue No. 3 was an immaterial issue, and should not have been submitted by the court issues No. 4 and 5 were submitted conditionally, to be answered only in the event of an affirmative response to No. 3. Since No. 3 was answered "No", the answers to issues No. 4, that Stern relied upon the false representation made by M. H. Chandler, and No. 5, that Stern would not have executed the April 11, 1953 contract had he known that Sidney Chandler owned an interest, must be disregarded as mere voluntary findings of the jury. Alpine Telephone Corporation v. McCall, 143 Tex. 335, 184 S.W.2d 830; Collins v. Brown, Tex.Civ.App., 279 S.W.2d 627; Herrera v. Zinberg, Tex.Civ. App., 287 S.W.2d 695, writ ref., n. r. e.

However, in determining whether actionable fraud is shown in this cause under the findings of the jury in response to issues 1, 2, 4 and 5, if the answers to 4 and 5 should be considered, it is interesting to note the manner in which the case was brought, and the various pleadings of plaintiff. The original petition, filed August 7, 1961, was in the nature of an interpleader, plaintiff alleging that it owed royalty under the contract, but saying that because of conflicting claims of the two defendants, it did not know to whom and in what proportion the money should be paid, and it tendered the royalty money into court with the request that the court determine to whom it belonged. Though this pleading contained a count on breach of contract, it did not mention fraud or cancellation. The trial court entered an order that plaintiff pay royalty money due and to become due into court, and directed that it be paid ¾ to M. H. Chandler and

¼ to Sidney P. Chandler. More will be said of this order under appellant's points 4 and 5.

The defendants filed their answer to the original petition on August 25, 1961, wherein they stated, in answer to plaintiff's count on breach of contract, that they had agreed in January, 1953, that the Teeth Protector and all rights thereto would be owned ¾ by M. H. Chandler and ¼ by Sidney P. Chandler, and that it had been so owned ever since that time, and that plaintiff knew such fact. However, when plaintiff amended its petition on October 10, 1962, with knowledge of the allegations by both defendants that the sole ownership of the patent rights in the Teeth Protector were not in Dr. Chandler when the contract was originally executed and that Sidney owned ¼ of said rights, plaintiff did not allege fraud, nor did it seek to cancel the contract for original fraud. Plaintiff again alleged that it was ready, able and willing to pay royalties as provided in the contract to the person or persons entitled to receive the same, but that due to a controversy between the defendants, it did not know to whom such royalties should be paid, and again tendered into court all royalties due and unpaid and again asked the court to determine to whom such sums, as well as subsequent royalties, should be paid. It was not until the second amended original petition was filed on May 8, 1965 that plaintiff included a count in its pleading for cancellation due to fraud in the original contract.

In the meantime, plaintiff continued to operate under the contract and to receive its benefits right up to the day of the judgment in this cause. Prior to the filing of this suit, plaintiff had paid the sum of $54,415.25 royalty on the Teeth Protector, at 25¢ per unit. From the time the suit was filed until August, 1963, plaintiff paid royalty into court in the sum of $89,788.00. On the date of judgment plaintiff had accumulated additional unpaid royalty in the sum of $18,207.50. The best years for the production and sales of the Teeth Protectors were the three years ending February 28, 1963. This increase in business was shown to be due to a rule adopted by the National Association of High School Athletic Associations, and by similar rules adopted by other school organizations, making use of a mouth or teeth protector mandatory for high school football players.

We feel that as to plaintiff's count on fraud, the situation as shown by the record brings this case under the proposition of law announced in Rosenbaum, et al., v. Texas Bldg. & Mortg. Co., et al., Tex. Com.App., opinion adopted by Supreme Court, 140 Tex. 325, 167 S.W.2d 506, p. 508, as follows:

"The principle of law applicable to the foregoing facts is well established. It is, in effect, that, if a person who is induced by fraud to enter into a contract continues to receive benefits under the contract after he becomes aware of the fraud, or if he otherwise conducts himself in such manner as to recognize the contract as subsisting and binding, he thereby affirms the contract and waives his right of recission. An express ratification is not necessary; any act based upon a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of waiving the right of recission. Grabenheimer v. Blum, 63 Tex. 369; J. B. Colt Co. v. Head, Tex.Com.App., 292 S.W. 198; Powell v. Rockow, 127 Tex. 209, 92 S.W. 2d 437; Hatch v. National Cash Register Corp., Tex.Civ.App., 105 S.W.2d 1114, 12 C.J.S., Cancellation of Instruments, § 38; 8 Am.Jur., Cancellation of Instruments, Sec. 46."

See also, Mooers v. Richardson Petroleum Co., 146 Tex. 174, 204 S.W.2d 606; Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892; Webb Materials, Inc. v. Lacey, Tex.Civ. App., 364 S.W.2d 473; writ ref., n. r. e.; Lamoyne v. Parks, Tex.Civ.App., 295 S.W. 2d 917, writ ref., n. r. e.

We hold that if appellant ever had any right of recission due to fraud, such

right was waived under the rule of law announced in Rosenbaum, supra.

■■■ We also note that an essential element of actionable fraud sufficient for cancellation of a contract is injury. Where there is a benefit instead of an injury, there is no actionable fraud. 25 Tex.Jur.2d, Fraud and Deceit, § 30, pp. 658, et seq., and cases cited; Ulmer v. John Hancock Mutual Life Insurance Company, et al., Tex.Civ.App., 161 S.W.2d 862, 864, writ ref. w. o. m. Some injury must be shown to constitute cause for recission of a contract for fraud. Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 51 A.L.R. 1, on rehearing, 113 Tex. 441, 258 S.W. 462. The question of injury as a result of the alleged fraud or misrepresentation is not to be confused with that of damages due to the alleged breach of contract. The latter issue was submitted to the jury as Special Issue No. 13. The issue of injury to plaintiff as the result of the alleged fraud in connection with the misrepresentation of ownership of the patent rights was not submitted to the jury, nor was its submission requested by plaintiff. In view of the court's judgment sustaining defendants' motion for judgment, which raised this question, we are authorized to assume that the issue of no injury as a result of such misrepresentation was determined by the trial court favorable to the decree as rendered. Rule 279 T.R.C.P.; Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449, p. 452.

The trial court did not err in refusing to render judgment for appellant based on its plea of fraud. Its first point of error is overruled.

## BREACH OF CONTRACT

Appellant's second point concerns the alleged error of the court in failing to give effect to the findings of the jury of a breach by defendants of the contract of April 11, 1953, and especially paragraph 17 thereof providing that appellant would have a first refusal in the event of sale of an interest in the patent by M. H. Chandler. Its third point alleges error of the trial court in basing its judgment upon the defense of limitation.

As heretofore stated, there was a sharp issue of fact raised in the evidence as to when Stern and other officials and representatives of Featherlax Corporation first learned that Sidney Chandler was claiming or had acquired an interest in the patent rights to the Teeth Protector. Defendants testified that Stern and his attorney, Aaron Hessel, were told during such negotiations that Dr. Chandler had given Sidney as attorney fees a quarter interest in all rights to the invention, and that such was discussed between them before the contract was executed. This was definitely denied by Stern and Hessel, and by other plaintiff's witnesses who had anything to do with discussions with defendants. However that may be, by written instrument dated January 25, 1955 signed by M. H. and Sidney P. Chandler, the former granted and assigned to the latter a one-fourth interest in the letters patent granted by the U. S. Patent Office September 24, 1954 (the application had been pending since April 1953), and to the Teeth Protector and all contracts made with reference thereto, in consideration of "legal services rendered and to be hereafter rendered by Sidney P. Chandler, a lawyer, in connection with the issue of Letters Patent, contracts in relation with the manufacture and sale of the patented article, or any improvement or improvements to said article, and legal or business advice, prosecution or defense of any suit or suits on or over said patent or infringement thereof or any legal services rendered in any way pertaining to said patent or patented mouth or teeth protector, and the agreement on the part of said Sidney P. Chandler to hereafter perform for me, my heirs, executors or administrators, during the life of said patent or any improvements thereto * * *." While both Chandlers testified that this same arrangement had been agreed to orally early in 1953, this was the first · written evidence of such

agreement. In the trial court and here, plaintiff-appellant contend that the execution of this instrument constituted a sale by M. H. Chandler to Sidney P. Chandler of said ¼ interest in the patent rights, and since plaintiff had not been given the right of first refusal to purchase said interest on the same terms there was a breach of the contract and plaintiff was entitled either to exercise its option to purchase the interest under proper determinations, or in the alternative, to recover its damages by reason of such breach.

In answer to special issues on this phase of the case, the jury found (11) that M. H. Chandler sold an undivided interest in the patent to Sidney P. Chandler after April 11, 1953 and prior to August 7, 1961; (12) that M. H. Chandler failed to give plaintiff the right to purchase a one-fourth interest in the patent for the price paid therefor by Sidney P. Chandler; (12a) that plaintiff suffered damage because of such failure; (13) that $23,000.00 was the amount of money that would reasonably compensate plaintiff for such failure inquired of in No. 12; (14) that the patent did have a cash market value as of January 25, 1955; (15) unanswered as to the amount of such value; (16) $13,000.00 would be the reasonable value of attorney fees for necessary legal services performed by Sidney P. Chandler for M. H. Chandler in connection with the teeth protector.

Paragraph 17 of the contract of April 11, 1953, which appellant contends was breached by the written agreement of January 25, 1955 between M. H. Chandler and Sidney P. Chandler, was not an agreement by M. H. Chandler not to sell or transfer any of his rights under the patent application. In fact paragraph 14, as heretofore mentioned, expressly gave him the right to assign his interest therein. Paragraph 17 provides that in the event M. H. Chandler, as Party of the First Part, desired to sell any of his patent rights, Party of the Second Part (plaintiff as successor of such party's interests) had the option and right of first refusal to purchase such rights as were offered for sale at the same price as any bona fide offer made to M. H. Chandler by the third party. In the agreement between the two Chandlers there was no offer to sell an interest for a price which could be met by plaintiff. The employment of an attorney is a personal matter between client and lawyer. In this instance, the services of the attorney were to continue during the life of the patent, a period of seventeen years according to patent laws. Undoubtedly, plaintiff could not perform the services which Sidney Chandler agreed to perform under the terms of the written agreement between himself and his brother. Dr. Chandler was entitled to employ his own lawyer to represent and protect his rights involving the patent, possible infringement claims (which the evidence showed were being made) contract rights, law suits, and all things in connection with his invention for a period of many years in the future. There was no possible way for plaintiff to meet the price, if it is to be called a price, or consideration that Sidney P. Chandler as lawyer agreed to pay, if that term is appropriate, for the interest in the patent and Teeth Protector assigned to him. The amount of $13,000.00 found by the jury to be the reasonable value of attorney fees for necessary legal services performed by Sidney P. Chandler would not be the equivalent of the bona fide offer of a third party mentioned in paragraph 17. It appears to us that an essential element of appellant's theory is that the court through the jury verdict, can fix the value of Sidney P. Chandler's service as his brother's lawyer, let appellant pay that sum and dispose of him. For the agreement between M. H. and Sidney to be a breach of the 1953 contract plaintiff would have had to prove and secure jury findings that it could have been able to and would have paid "the price" that Sidney paid. As heretofore stated, plaintiff could not and did not meet this burden. In our judgment the transaction between M. H. and Sidney, as shown by their agreement of January 25, 1955, did not constitute the sale of a part of the

patent rights of M. H. as was contemplated by the provisions of paragraph 17, supra, and that plaintiff has not shown itself to be entitled to the relief sought by reason of the alleged breach of contract.

But even if the premise of a breach of the contract by defendants should be accepted (and we do not accept it), any cause of action due to such breach was barred at the time plaintiff filed this suit. Defendants plead the two year and four year statutes of limitation. The jury found, in answer to special issue No. 17, that plaintiff acquired knowledge of the claim of ownership in the patent by Sidney P. Chandler more than four years prior to August 7, 1961, the date the suit was filed. The evidence shows without dispute, and plaintiff concedes this to be a fact, that on June 5, 1955, Sidney wrote to plaintiff a letter in which he stated that he owned a one-fourth interest in the patent rights in question, and that M. H. Chandler owned a three-fourth interest thereto. Considerable correspondence between the parties concerning this statement followed, in all of which Sidney, as attorney for M. H. Chandler, acted for his client. The plaintiff sought to secure confirmation in writing from M. H. Chandler of Sidney's interest, but all correspondence addressed to M. H. Chandler was referred by him to his attorney for answer, and the written agreement between M. H. and Sidney was not furnished plaintiff until in 1961, prior to the filing of this suit.

Appellant contends that the notice from Sidney of his interest in the patent given in the letter of June 5, 1955, as well as in subsequent correspondence between him and plaintiff, did not constitute notice from M. H. Chandler that he had in fact assigned the one-fourth interest in the patent to Sidney, and that although plaintiff made diligent inquiry in seeking to secure confirmation by M. H. of such ownership by Sidney, it was unable to secure such confirmation. In answer to special issues, the jury found (7) that plaintiff made diligent inquiry or inquiries of M. H. Chandler to

determine the validity of any claim or claims that Sidney Chandler made concerning his ownership of an interest in the patent; (8) that M. H. Chandler did not deny to plaintiff that Sidney owned an interest in the patent; (9) that plaintiff requested Sidney P. Chandler to furnish it with some written authority from M. H. Chandler as a basis for his claim to an ownership interest to the patent. Upon the basis of such jury findings, plaintiff contends that its cause of action on breach of contract is not barred (1) because knowledge of Sidney P. Chandler's assertion of ownership was not equivalent to knowledge of a transfer of an interest from M. H. to Sidney Chandler; (2) the parties were guilty of fraudulent concealment of the facts in failing to furnish, on request, written evidence from M. H. Chandler of the assignment.

Again we state that in all of this correspondence Sidney was acting as the attorney for M. H. and that the officials of plaintiff knew of such relationship. Under the circumstances as shown by the evidence, the statements made to plaintiff in Sidney's correspondence with plaintiff was sufficient to place them on notice, more than four years prior to the filing of this suit, of an assignment from M. H. Chandler to him of the interest in the patent. In order to prevent limitations from running it was necessary to establish and secure jury findings of fraudulent concealment by defendants of the facts of the alleged breach of contract.

■ It is well settled that the fraudulent concealment of a cause of action by a defendant, accompanied by the plaintiff's failure, after exercising diligence to discover the concealment, will avoid the bar of the statute of limitations. 37 Tex.Jur.2d, Limitation of Actions, § 76, pp. 213, et seq., and cases cited. However, the concealment must be fraudulent. No issues of fraudulent concealment were requested or submitted to the jury. The findings men-

**792**

tioned above do not constitute findings of fraudulent concealment.

■ We are of the opinion that any cause cf action which plaintiff may have asserted based on breach of contract was barred by the four-year statute of limitations when this suit was filed. Appellant's second and third points are overruled.

Appellant's fourth and fifth points concern that portion of the judgment adjudging plaintiff and certain of its officials in contempt of court, assessing a fine of $100.00 against appellant, and ordering its president Harold L. Stern confined in jail for three days and until such time as he has purged himself of contempt, and suspending such fine and jail sentence for thirty days after the judgment should become final. Such order was made on motion of defendants for plaintiff's failure and refusal to obey the court's order to pay into court for distribution to the defendants of royalties on the Teeth Protector in the sum of $18,207.50, accumulated since plaintiff had ceased making payments under the court's original order on its petition in interpleader in August, 1963.

■ The decree of the court gave judgment to the defendants against plaintiff for this $18,207.50. The transcript includes a supersedeas bond duly conditioned as provided by law signed by plaintiff and a corporate surety, and approved by the district clerk. While we feel that for other reasons raised by appellant this contempt order was improperly rendered and should be set aside, the parties agreed in open court that the supersedeas bond of plaintiff and its corporate surety is sufficient to satisfy the requirements of the court order on the contempt matter, and that said order should be nullified.

■ Accordingly, all of that portion of the judgment of the trial court dealing with any order of contempt is set aside and held for naught. Appellees' cross point to the effect that the court erred in not allowing legal interest on the amount of each

delinquent royalty payment from the date it became due is overruled.

The judgment as so reformed is affirmed. The costs of appeal are assessed two thirds against appellant and one third against appellees.

Reformed and affirmed.

## OPINION ON MOTION FOR REHEARING

In view of the holding in Texas Employers' Insurance Association v. Collins, 156 Tex. 376, 295 S.W.2d 902, we withdraw from our opinion the second paragraph under the title "FRAUD," in which we stated that Special Issues Nos. 4 and 5 should be disregarded as mere voluntary findings of the jury. This action will have no effect on the affirmance of the judgment.

Appellant's Motion for Rehearing, and Appellees' Limited Motion for Rehearing are overruled.